OPINION of the Court, by
Judge Logan.
— This is an appeal from a judgment of the county court of Barren, refusing to admit to record an instrument of writing purporting to be the last will and testament of Reuben Cochran deceased.
To the establishment of this will, two objections were made — 1st, The want of capacity in the testator to make his will. 2d, That it was not executed agreeably to the mode prescribed by law.
The testator had for a considerable time made use of ardent spirits to excess — had become habituated to ¡⅜* *492 toxication, and was evidently on the decline of life» tj • ¶ ¶ (• ⅜ • it ir' But with respect to the retention or ms intellectual faculties, and the capacity to dispose of his estate, a diversity of opinion is entertained among- the witnesses. The writer of the will and two oí the subscribing witnesses were of opinion that the testator was in his senses; whilst another subscribing witness and the physician, who occasionally attended the testator in his illness, entertained a different opinion, or thought him in a situation which incapacitated him from disposing of his estate. No attempt was made to impeach the credibility of either of those two witnesses ; but on the contrary there was proof that the character of the one who witnessed the will is good.
In addition to the three witnesses who deposed to the competency of the testator to make his will, a fourth may he mentioned, wh.o within a few days after the execution of the will called upon and remained with the testator from the evening of one day until some time next morning. But three of those witnesses are relations of one of the legatees, and the credibility of the fourth was somewhat questioned upon the score of character, as also upon the ground of a former contradictory statement.
In estimating the testimony for and against the competency of the testator to direct the disposition of his property, it will be proper to take into view the circumstances under which the will was made. The testator was a single man, without a wife or legitimate children. He acknowledged two girls to be his children, and was instrumental in their removal from Carolina to Kentucky. He had provided for them by a former will, and frequently declared it was his intention to Jeave his property to those girls, and not to his brother or other relations. But, a few weeks before his death, he sent for his brother, residing about 30 miles from him, who, together with his son, waited on the testator when the will in question was made, containing a devise of the land on which the testator resided to the two girls, and of the slaves to Thomas Hinton, the grand sou of the testator’s brother, who wrote said will.
David Cochran, the brother of Reuben the testator, and John, the son of David and nephew of Reuben, both went to see the testator; John arriyed on the *493 evening preceding the arrival of his father, and deposes that his uncle then informed him of the manner in ivh'ich he intended to dispose of his estate, and finds it nearly as the testator had informed him. David, who wrote the will and signed the name of his brother, deposes that he wrote it agreeably to the direction then given by the testator ; and that he did not know the names of the several negroes bequeathed, only as he was informed of them by the testator, except a few of the elder negroes. That provision of the will is as follows, viz. “ I give and bequeath and hereby will unto Thomas Hinton,"son of Richard Hinton, deceased, in Smith county, Tennessee, my negro man named Dick, and liebaccah his wife, also my negro girl named Pugg, also my negro boy Joseph and my negro fellow Richard, also Piidi, which I am now at law for, if I obtain him, and my negro boy Buck, and rnv negro girl Ritter, and mv negro girl Nancy, also M illy and Sin-dry; also my still, with ail tubs, &c”
If it be a fact, as D. Cochran swears, that he had not been in the habit of visiting his brother, and that he did not know the names of his negroes, (and of which there is no proof to the contrary) this clause in the will pretty satisfactorily shews that the testator was at the time of a disposing mind, capable of knowing his purpose, and the disposition he wished of his slaves thus severally designated by name. But there is another circumstance detailed by one of the subscribing witnesses, which is very strong to shew that the testator was not insensible of what he was doing in the execution of this will. It is this, that in procuring witnesses to the will he directed the negro boy to a boatyard, but supposed it doubtful whether they could be obtained there, as the men were working on wages ; and directed him from thence to the witness, who deposes that the same information given to him by the boy who came for him, was repeated by the testator upon his arrival at his house. This circumstance evinces such arrangement of mind and recollection of the necessity of witnesses, that it would seem arbitrary indeed in this court to arrest the distribution of his property according to his own will.
But when in addition to this circumstance we unite those of ¿he testator having sent for his brother upon that business, the particular specification of his slaves *494 ag inserted in the will, and the concurring testTVnony oí1 several witnesses who were with him on that day, we are still more confirmed as to the capacity of the man to direct the disposition of his own estate, unless indeed other opposing testimony shall repel these circumstances and weight of evidence. The only opposing witness who speaks with reference to the same period, except from general impression only, is the other subscribing witness to the will; and he proves the acknowledgment of the testator that the instrument presented for his attestation was his will, without stating one solitary instance of insanity in him on that day, but resting his opinion upon general impression, and two unimportant previods occurrences which had some days transpired. The knowledge of the physician does not relate to the time the will was made ; he had not seen him for several days about that period, and it is therefore by inference only that his testimony is made to apply to that day. Under evidence like this, indulging in presumption of such dubious complexion, we cannot think a court justifiable in arresting the will of a man, and thereby perhaps causing his estate to pass contrary to his own, wish and will.
The next point for consideration is as to the manner of executing the will.
It is necessary to the validity of this will that it should have been signed by the testator, or by some person in his presence, and by his directions ; and moreover be attested by two or more competent witnesses, subscribing their names in bis presence.
The will was written by Divid Cochran, in the absence of all other persons except the testator. The name of the testator was signed by D. Cochran — he proves that it was done under the direction of the testator. The subscribing witnesses all prove the acknowledgment of the testator that this instrument was his will, and in his presence attested the same. This is a substantial compliance with the law. A will written and signed by the testator himself, attested by the proper number of witnesses, who can prove its execution only from the acknowledgment of the testator at the time of their attestation, though they did not see him sign it, and his hand writing could nof be proved, yet it is believed would be held sufficient. And it is conceived *495 that proof of the testator’s name being signed by another under his direction who proves that fact, cannot operate more unfavorable to the validity of the will, than where proof of the signature or by whom it was written cannot be made, provided the requisite number of witnesses have attested it, and prove the acknowledgment of the testator at the time of their attesting it as his will.
We are therefore of opinion that the testator was capable of making his will, and that the same was executed agreeably to the requisition of law.
We have deemed a particular examination into the conduct and characters of the witnesses who have been assailed unnecessary, since from the whole circumstances we cannot draw a different conclusion with respect to the ¡execution of the will, unless we were authorised to indulge without evidence in ths presumption that this will was a forgery or written differently from the direction of the testator, against the evidence not only of its Writer, but also against that of John Cochran, as well as the acknowledgment of the testator in the presence of the other subscribing witnesses that that was his will. Whether its contents were known to him, they cannot depose ; but it would at least have the appearance of rash illiberality, to assert a total ignorance in the testator, in opposition to the oaths of some, and acknowledgment of the testator himself.
Upon the whole, therefore, we are of opinion that the county court erred in refusing to admit to record the said will. Wherefore it is considered by the court that the judgment of the county court rejecting the probate of the said last will and testament of Reuben Cochran, deceased, be reversed ; that the said will and testament be here recorded as'fully proved, and the original transmitted to the said county court of Barren, to be there admitted to record, as fully proved in this court, and thereon to proceed as the law directs in like cases.