Walton v. Kendrick.

WALTON *et al.*, *Appellants*, v. KENDRICK *et al.*

In Banc, June 4, 1894.

1. **Will**: EVIDENCE: DECLARATIONS OF TESTATOR. The declarations of a testator before or after making a will are inadmissible on the issue of its execution.

2. ———: DEVISAVIT VEL NON: COURT: JURY. The respective functions of the court and jury on the trial of the issue of *devisavit vel non*, stated.

3. ———: ———: EXECUTION OF WILL, EVIDENCE OF. The signing of a will by the testator, or by another by his direction in his presence, may be inferred by the jury from evidence of the testator's acknowledgment to the attesting witnesses that the instrument was his will.

4. ———: ———: ———. Mere proof of such acknowledgment by the testator to the witnesses that the instrument was his will, in the absence of other circumstances tending to show the same, will not authorize the inference that the instrument signed by another was so signed *in the presence* of the testator. (Per BLACK, C. J.)

*Appeal from Chariton Circuit Court.*—HON. GAVON D. BURGESS, Judge.

REVERSED AND REMANDED.

*Crawley & Son* for appellants.

(1) The trial court erred in admitting the subsequent declarations of John W. Price, made to the witness, Sarah S. Kendrick, as proper evidence by which to establish the execution of the writing in controversy. *First.* In the first place, it was not proved, nor is it even fairly inferable from her testimony, that the paper to which Judge Price referred in the supposed conversation with Mrs. Kendrick, is the same paper now propounded as his will. *Second.* In the second

place, though the identity of the paper be conceded, still, no subsequent declaration of the supposed testator in regard to it, is admissible upon the issue of its due execution.   Schouler on Wills [2 Ed.], sec. 317; *Johnson v. Hicks*, 1 Lans. N. Y. 150; *Jones v. McClellan*, 76 Maine, 49; *Gibson v. Gibson*, 24 Mo. 227; *Cawthorn v. Haynes*, 24 Mo. 237; *Tingley v. Cowgill*, 48 Mo. 291; *Spoonemore v. Cables*, 66 Mo. 579; *Rule v. Maupin*, 84 Mo. 587; *Bush v. Bush*, 87 Mo. 480; *Jones v. Roberts*, 37 Mo. App. 181; *Kennedy v. Upshaw*, 64 Tex. 411; *Runkle v. Gates*, 13 Ind. 95; *Couch v. Eastham*, 27 W. Va. 796; *Davis v. Davis*, 123 Mass. 590; *Caeman v. Vanhark*, 33 Kan. 333; *Kitchell v. Beach*, 35 N. J. Eq. 446; *Hayes v. West*, 37 Ind. 21.   (2)   There had been no sufficient legal proof of the *factum* of the pretended will to entitle said paper to be read in evidence.   The trial court erred, therefore, in admitting it over appellants, objection.   *First.* Aside from a few loose and inadmissible declarations, said to have been subsequently made by the supposed testator to Mrs. Sarah S. Kendrick, as set forth in her deposition, there is not one word of proof in this record that the name "John W. Price" was signed to the paper in controversy, by his direction and in his presence as required by the statute. The statement of the supposed testator to the persons who subscribed as witnesses, that the paper was his "will," can not supply or dispense with proof that the previous signature was placed there in one of the only two ways pointed out by the statute.   R. S. Mo. 1889, sec. 8870; *Ibid.*, 1879, sec. 3962; *Catlett v. Catlett*, 55 Mo. 330; *Chaffee v. Baptist Miss. Conv.*, 10 Paige, Ch. 85; *Lewis v. Lewis*, 11 N. Y. 220; *Mitchell v. Mitchell*, 16 Hun, N. Y. 97; *Baker v. Woodbridge*, 66 Barb. (N. Y.) 261; *Sisters of Charity v. Kelley*, 67 N. Y. 409; *Matter of Mackay*, 110 N. Y. 611; *Matter of Booth*, 23 Weekly Dig. (N. Y.) 248; *Matter of Dale*, 56 Hun, 169; *Burwell*

*v. Corbin*, 1 Rand. (Va.) 131; *Asay v. Hoover*, 5 Pa. St. 21; *Graybill v. Barr, Ibid.*, 441; *Greenough v. Greenough*, 11 Pa. St. 489; *Barr v. Graybill*, 13 Pa. St. 396; *Waite v. Frisbie*, 45 Minn. 361; 2 Greenleaf on Ev. [13 Ed.], sec. 676. *Second.* Where the entire document is written, or the name of the testator is signed, by him, in his own handwriting, or where another indites the paper, and there is direct proof that it was signed for the testator, by his direction, in his presence, by a disinterested scrivener, then, if he acknowledge the genuineness of the signature to the subscribing witnesses, the authorities very justly hold this to be sufficient *prima facie* proof of execution; notwithstanding none of the subscribing witnesses were present when the testator's name was actually signed. *Cravens v. Falconer*, 28 Mo. 19; *Grimm v. Tittman*, 20 S. W. Rep. Mo. 664; *Way v. Brown*, 30 Ga. 808; *Ragan v. Ragan*, 33 Ga. (supplement), 106; *Holloway v. Galloway*, 51 Ill. 159; *Scoules v. Plowright*, 10 Moore (Priv. Coun.), 440; *Clark v. Dunnavant*, 10 Leigh (Va.), 13; *Hall v. Hall*, 34 Mass. 373; and many other cases to the same effect. But where, as here, there is no positive proof that the paper was signed either by the direction, or in the presence, of the supposed testator; where, as here, no subscribing witness saw the act of signing, or heard the supposed testator declare that he had signed, or had directed another to sign for him; where, as here, the scrivener not only "writes herself an heir;" but, being an heir, signs as well as writes the paper under which she claims a lion's share of the supposed testator's property; something more is required to establish the "due execution" of the paper, than the mere acknowledgment or declaration of the supposed testator to subscribing witnesses that said paper is his "will." Instead of raising a presumption of the due execution of the supposed will, such proof

as this raises the very strongest presumption of simulation and fraud, casting, by the force of their own evidence, an additional *onus* upon proponents, which they have utterly failed to shift from their shoulders. *Hughes v. Meredith*, 24 Ga. 325; *Gerrish v. Nason*, 22 Maine, 438; *Jones v. McClellan*, 76 Maine, 49; *Delafield v. Parrish*, 25 N. Y. 9; *Purdy v. Hall*, 134 Ill. 308; *Barry v. Bultin*, 1 Curt., Eccl., 637; *Panton v. Williams*, 2 Curt., Eccl., 530; s. c., 2 Moore (Priv. Coun.), 480; *Scoules v. Plowright*, 10 Moore (Priv. Coun.), 440; *Lee v. Dill*, 11 Abb. Pr. Rep. (Old Series), 214; *Lake v. Ranney*, 33 Barb. N. Y. 49; *Baker v. Woodbridge*, 66 Barb. N. Y. 261; *Sisters of Charity v. Kelley*, 67 N. Y. 409; *Howland v. Taylor*, 53 N. Y. 627; *Matter of Bartholick*, 35 N. Y. St. Rep. 730; *Waite v. Frisbie*, 45 Minn. 361; *Matter of Booth*, 23 Weekly Dig. (N. Y.), 248; *Riddell v. Johnson*, 26 Gratt. (Va.), 162; *Harvey v. Sullens*, 46 Mo. 147; Schouler on Wills [2 Ed.], sec. 245.

*Tyson S. Dines* and *C. Hammond & Son*, for respondents.

(1) The evidence of the execution of the will in this case shows full compliance with the statute. *Adams v. Field*, 21 Vt., 256; *Lemayne v. Stanley*, 3 Levinz, 1; *Knight v. Crockford*, 1 N. P. Cas., 190; *Dudley v. Dudley*, 3 Leigh (Va.), 145. (2) Not only did the testatator state to Dr. H. H. D. Moorman, one of the attesting witnesses, that "he had it written," but he acknowledged the signed instrument, signature, and all, to be his will; and the witness saw his name written there. This was sufficient. *Baskin v. Baskin*, 36 N. Y. 416; *Saundenn v. Jackson*, 2 B. & P. 238; *Schneider v. Norris*, 2 M. & S. 286; *Sarah Miles' Will*, 4 Dana, 1; *Ellis v. Smith*, 1 Ves. Jr., 11; *Carleton v. Grif-*

*fin*, 1 Burr., 549; *Roberts v. Welch*, 46 Vt. 162; *Knight v. Crockford*, 1 Esp. N. P. Cas., 190; *Lemayne v. Stanley*, 3 Levinz, 1. (3) The question of the due execution of the will was a question of fact to be determined by the jury from the evidence. It was a fact that could be established by circumstances, as well as direct proof, and there was ample evidence upon which to submit this question to the jury. *Grimm v. Tittman*, 20 S. W. Rep. (Mo.) 664. (4) Where a testator declares to two subscribing witnesses that a paper to which his name is already signed is his will, and then requests them to sign as witnesses he sufficiently acknowledges his signature. "Nor is it necessary that the testator should say in express terms, 'that is my signature.' It is sufficient if it clearly appears that the signature was existent on the will when it was produced to the witnesses, and was seen by the witnesses when they subscribed the will." *Blake v. Knight*, 3 Curties, 547; *Keigwin v. Keigwin*, 3 Curties, 607; *In re Ashmore*, 3 Curties, 756; Jarman on Wills [5 Ed.], p. 81; *In re Trenor's Est.*, 4 N. Y. S. 466; *In re Austin's will*, 45 Hunter, 1; *Clark v. Dennavant*, 10 Leigh, 13; *Hospital v. Williams*, *Adm'r*, 19 Mo. 609; *Cravens v. Faulconer*, 28 Mo. 19; *Grimm v. Tittman*, 20 S. W. Rep. (Mo.) 664; *Dudley v. Dudley*, 3 Leigh, 145; *Hall v. Hall*, 17 Pick. 373; *Nickerson v. Buck*, 12 Cush. 332; *Grayson v. Wilkinson*, 2 Ves. 454; *Nady v. Grix*, 8 Ves. 505; *Morrison v. Turner*, 18 Ves. 183; *Halloway v. Galloway*, 51 Ill. 159; *Crowleg Crowleg*, 80 Ill. 469; *In re Trenor's Est.*, 4 N. Y. Sup. 466. (5) "A will is sufficiently attested when subscribed by the witnesses in the presence and at the request of the testator, although none of them saw the testator sign, and only one of them knew what the instrument was." *Dewey v. Dewey*, 1 Met. 349; *White v. British Museum*, 6 Bing. 310; *Hogan v. Grosvenor*, 10 Met. 54; *Gamble v. Gam-*

*ble*, 39 Barb. 373. (6) "That the draughtsman of a will takes a legacy under it, is suspicious only in connection with other circumstances indicating fraud or undue influence. *Coffin v. Coffin's Ex'rs*, 23 N. Y. 9; *Butlin v. Barry*, 1 Curties, Ecc. R., 637. (7) The declarations of testator were admissible in determining whether testator fully comprehended and approved the will. *Maxwell v. Hill*, 15 S. W. Rep. (Tenn.) 253; *Beadles v. Alexander*, 9 Baxt., 604; *Linch v. Linch*, 1 Lea, 526. They are admissible to show intention, purpose, mental peculiarity and condition. *Shailer v. Bumstead*, 99 Mass. 112; *Herster v. Herster*, 16 Atl. Rep. (Pa.) 342; *Herster v. Herster*, 122 Pa. St. 239; *Harris v. Hospital Co.*, 10 R. I. 313; *Laugham v. Lanford*, 19 Vesey, 649; 31 Cent. Law Jour. 454.

BRACE, J.—This is a statutory proceeding instituted in the circuit court of Chariton county to contest the validity of an instrument of writing purporting to be the last will and testament of John W. Price, late of said county, deceased, duly admitted to probate in said county on the twenty-eighth of May, 1890, prosecuted by some of his heirs against a daughter of said deceased and her husband, the petition charging, in substance, that said paper writing so admitted to probate as the last will of the said deceased "was not written or signed by the said John W. Price, and was not signed by any other person for him, by his direction, in his presence, as provided by law; and that the said paper writing, by reason of the matter aforesaid, is not the will of John W. Price."

Upon this allegation issue was joined by answer, and the case came on for trial at the October term, 1891 of said circuit court. After the jury had been impaneled and sworn, and the statutory issue framed, by the court, the defendants produced said instrument of

writing, which is in words and figures as follows, to wit:

"I, John W. Price, of the county of Chariton, and state of Missouri, being of sound and disposing mind, and knowing that I have to leave this world as all mortal flesh is doomed to do, I feel anxious to dispose of my entire estate after my death. In accordance with my well matured determination I do hereby make, publish and declare the following to be my last will and testament, viz.:

"In the first place I bequeath my entire estate (except what I have already disposed of), to my wife, Mary E. Price, to use for the support of herself and the two youngest children, Mary Katherine Price and Wallace Powell Price.

"To my daughter, Mary L. Harper, I will one dollar, having advanced her her portion of my estate.

"To my daughter, Louisa M. Walton, I will one dollar, having advanced to her her portion of my estate.

"To my daughter, Harriet A. Vergin, I will one dollar, having advanced to her and her children their portion of my estate.

"To my son, Elmer D. Price, I give the south half of my Huss farm; and to my son, John Walter Price, I will the north half of the Huss farm.

"To my daughter, Aurelia Harding, I will one hundred and sixty acres of land on Yellow Creek, the numbers of which can be found in my tax receipts.

"To my son, William W. Price, I will one dollar, having advanced to him his portion of my estate.

"My home residence, which I have given my wife, Mary E. Price, a lifetime control and possession, I give to my two youngest children, M. K. Price and W. P. Price, to be equal heirs of all my land estate that I have not given away in this my will, and also all the land I may purchase before my death.

"I will my stock, household furniture, farm utensils and all the money I have not disposed of to remain as they are, for the use of the homestead as long as my wife lives; after her death to be divided between the two youngest children. I give Mary Katherine Price the home residence in an equal division of all my land that may be attached to the home tract or not otherwise disposed of, which I have heretofore stated my wife, Mary E. Price, is to control her lifetime.

"I give my wife one-third of my money after paying all my debts and what I have ordered in my will. I also appoint my wife executrix of my estate.

"I will that the probate court have nothing to do with my estate.

"Written this eighteenth of November, 1886.

"JOHN W. PRICE.

"Witness:

"F. K. VENABLE.
"H. H. D. MOORMAN.
"JOHN A. BROADDUS.
"JAMES D. INGRAM."

And in support thereof defendants introduced the attesting witnesses, who testified in substance as follows:

James D. Ingram testified that he lived in Chillicothe and in the winter of 1886 or 1887 he was at the residence of Mr. Price as a visitor. "In the morning, after breakfast, Mr. Price said: 'I am very glad that you came, I have been wanting to see you, I wanted you to witness my will;' and he produced that paper; just handed it to me; I did not read it. He said that was his will, and, looking at it, I said you have already several names; he said he wanted me also. I signed it and he stated that was his will. The paper is in same condition now as then, with same names upon it. The name of John W. Price was to it then. I signed

it as a witness. The other names are above mine. I signed it as a witness at Mr. Price's request.''

This witness, on cross examination, testified that he was acquainted with the handwriting of John W. Price. The paper was not written in the handwriting of Mr. Price, nor was it signed in his handwriting. Witness thought both the body of the writing and the signature were in the hand of Mrs. Kendrick. When Mr. Price handed him the paper to sign as a witness, he said it was his will. He signed it in the presence of Mr. Price.

F. K. Venable, another attesting witness, testified that he lived within half a mile of John W. Price and knew him well. ''Some time about the latter part of the year 1886, I don't remember the month, I was called upon to witness a paper presented to me as Judge Price's will. (Paper here exhibited to witness.) This is my signature attached to that paper. I did not read it. I only know that is my signature there. I only know this to be the same paper by the fact that I identify my signature. That is the only paper I ever signed for Mr. Price. I could not say whether the name of John W. Price was signed to it. I witnessed the paper he handed me and told me was his will. He told me that was his will and I signed it. Could not identify it only by my signature. If I am not mistaken, when he handed the paper to me he raised it up and let it fall over and told me that was his will and that he wanted me to sign it as a witness, I believe. A day or two, probably three or four days before that, he sent for me to come to his house when I had leisure. I went there and he told me what his business was, signing as a witness his will. I put my name there as a witness at his request and in his presence.'' Did not see paper when written. Did not see him sign it. Did not know his handwriting.

J. A. Broaddus testified: "In the fall of 1886, I don't remember the month, I was called upon to witness Judge Price's will. (Here paper exhibited to witness.) This is the document I signed. Judge Price presented it to me. He said it was his will and he would like for me to sign it as one of the witnesses. I signed it in his presence. I was there perhaps thirty or forty minutes. When I signed the paper I didn't see anything. It was folded up and handed to me to sign. I didn't read it. I didn't look at it all. I think one or two names were there, perhaps, when I signed it. Dr. Moorman was one of the witnesses. This is my signature." Don't remember whether members of the family were there or not. Did not see Mr. Price sign the paper or write it; was not present when it was written, nor when it was signed by him or by anyone for him.

H. H. D. Moorman testified: "Am a physician. Practiced my profession at Dalton, Chariton county, for four years, commencing in the spring of 1884. Was well acquainted with the late John W. Price. During my practice at Dalton was often called to visit him and his family professionally. Am one of the persons whose names appear as attesting witnesses to the paper recently probated as his will in the Chariton county probate court. I signed the paper at Price's request and in his presence, but did not see him sign it, nor was his name signed to it by any other person in my presence. His name was already written at foot of paper when I first saw it. He handed me the paper and said, 'This is my will and I want you to sign it as a witness.' He said he had it written, but I don't remember that he said by whom. He was then of sound mind."

The proponents then introduced in evidence the deposition of Sarah S. Kendrick, which, so far as it bears upon the present inquiry, is as follows:

VOL. 122—33

"Am sixty years old. Knew John W. Price well. He stayed a week here (at my house) a good many times and I spent as much as two weeks with him a good many times. His wife was my stepdaughter. I knew him for eighteen years.

"*Q.* I will get you to state if, about the year 1886, or some time after that, you ever had any conversation with him about this will? *A.* Yes, sir, I was there; I do not know how long after he made his will. I could not say. He came in and said 'Mrs. Kendrick, I have made my will.' I said to him, 'Did you sign the will, Mr. Price? He said 'No, I didn't sign it; I told Katie to write it and I saw her do it.'

"*Q.* You (he) said when you asked him whether he signed it or not that he told Katie to write it? *A.* Yes sir, but he saw her do it; he told her to write his name. * * * The condition of his mind was good, very good, at the time of these conversations. He knew everything he had, just as well as I. Was a remarkably smart man, Mr. Price was. You don't often see just such a man."

CROSS-EXAMINED.

"*Q.* Can you fix the date of your conversation? *A.* I could not, sir.

"*Q.* At the time of this conversation with Judge Price about his will, when he told you he had made a will, how long before that did he tell you he executed a will? *A.* He did not say.

"*Q.* Did he say how long the will had been executed? *A.* No, sir, just as I told you.

"*Q.* How long before Judge Price's death was it that this conversation occurred? *A.* I could not tell you, to save my life.

"*Q.* What was the condition of his health at that time? *A.* Pretty good; he came in from his work in the garden.

"*Q.* What was the exact language he used to you about the writing of the will? *A.* I asked Mr. Price who wrote the will and he says, 'I wrote the will, but Katie copied it.'

"*Q.* Then what else did you ask him? *A.* I says 'Mr. Price, they will break your will.' He says, 'They can not do it; I have given everyone something.' I says, 'Mr. Price, did you sign the will?' He says, 'No, I did not sign the will; Katie wrote my name and I saw her do it.'

"*Q.* Is that all he told you about the writing of the will? *A.* All that I have stated to you is all that he stated, as near as I can give it.

"*Q.* As I understand, then, he wrote it, Katie copied it and Katie signed it? *A.* He told her to do it and he saw her do it.

"*Q.* Are you positive he said he told her to do it? *A.* Yes, sir; I have sworn to that and could do it again.

"Judge Price met with a railroad accident some years before that. Katie did most of his writing. Don't think he consulted anybody about his business much. He was a man of fine sense. Don't think he relied on the advice of any member of his family in regard to business. Won't say that he transacted his business himself. Don't know exactly. Never saw him call on anybody to transact business. Have seen him call on Kate to put his name to a paper or write an article. Never heard him call on anybody to consult. He thought himself as capable as anybody. At times he was a great sufferer—an invalid. Had neuralgia very bad. Several times his side rose. He had a rising in one of his sides and was a great sufferer. About this

time I was at his house sometimes once a month, sometimes once in two months; could not tell the exact time. My visits were sometimes for a day or two; sometimes two weeks and more. Judge Price used narcotics, whiskey, like any other man. Sometimes he used it to relieve pain. Do not know as to his taking opiates. Never saw him take any.

"Q. Was he not frequently in a semi-unconscious condition, so that he would scarcely notice anything going on around him? A. I have seen him on two occasions when they gave him too much whiskey.

"Q. Were there not other occasions when he paid no attention to what was taking place? A. I could not say; I do not know.

"Q. Who was the attendant who brought these stimulants and gave them to him? A. His wife and his daughter.

"Q. At the time you speak of when he had too much whiskey and was in the condition you describe, do you know who gave it to him? A. I suppose it was either Bettie (his wife) or Katie. I do not know. One of the two. Nobody else did.

"Judge Price kept his valuable papers in the drawer of a bureau in his house. I do not think everyone had access to the drawer. I do not know whether it was locked or not; think it was. He was a money lender. Had no office, except his home. Do not know who transacted for him the business of loaning money, receiving interest and giving receipts. Never saw any of his business transacted when I was there."

To the introduction of so much of this deposition as contained declarations made by the testator in regard to the execution of the will, the contestants objected, and, their objection being overruled, they excepted. Upon the proof thus made proponents

offered in evidence the instrument of writing as the last will of said deceased, and, over the objection of the contestants, the same was permitted to be read to the jury, to which action and ruling they excepted. Thereupon the proponents rested.

The contestants introduced no evidence, but asked the court to give the following instructions:

"1. The court instructs the jury that it has not been proved that the paper writing read in evidence was signed by John W. Price, the supposed testator, or by any other person for him at his request or by his direction and in his presence; and you are therefore instructed that your verdict must be that said paper writing is not the will of. John W. Price.

"2. The court instructs the jury that the testimony of Mrs. Sarah Kendrick, contained in her deposition read in evidence, should not be considered by you for any other purpose than to show the mental condition and state of the affections of John W. Price, and that the said testimony is not competent for the purpose of proving that the said John W. Price executed the paper propounded as his will."

Which the court refused. The contestants excepted, and the case was submitted to the jury, who found the issue for the proponents, and upon this verdict the said instrument of writing was, by the judgment of the court, established as the last will of said Price, from which judgment the contestants appeal.

The errors assigned are substantially: *First.* That the court erred in overruling the objections to all that part of the deposition of Mrs. Kendrick relating to declarations concerning the execution of his will, made to said witness by John W. Price after the date of the supposed execution thereof, and in refusing the second instruction in regard to her evidence. *Second.* That

the court, upon the proof made, permitted the will to go to the jury and refused to give the first instruction.

I. The errors under the first head are disposed of in a satisfactory manner by MACFARLANE, J., in the first paragraph of the opinion handed down in division one, as follows:

"Since the decision of *Gibson v. Gibson*, 24 Mo. 234, it has been the settled law in this state that declarations of the testator made subsequent to the execution and publication of the will are not admissible as evidence of the facts stated. In his able and exhaustive opinion in that case Judge LEONARD sums up the law in reference to such declarations as follows:

"'The just result of the whole matter, we think, is, that these declarations, so far as they are relied upon to furnish evidence of the facts they contain, are mere hearsay, and that there is no ground, either of authority or reason, to exempt them from the rule of law excluding all such testimony. We repeat, however, what we have before remarked, that, as mere verbal facts, external manifestations of what is passing within, they are always evidence of the testator's intellect and affections for the time being, provided they are of such a character, either by themselves or in conjunction with other evidence, and are so connected with the making of the will in point of time, as to furnish any reasonable ground of judgment in reference to the testator's mental condition at that time.'

"This opinion is so conclusive and satisfactory that it has been adopted and followed in this state without question or comment wherever the question has been raised. *Tingley v. Cowgill*, 48 Mo., on page 298; *Rule v. Maupin*, 84 Mo. 589; *Bush v. Bush*, 87 Mo. 485; *Spoonemore v. Cables*, 66 Mo. 587. In the case last cited, Judge NAPTON contents himself by saying 'we have nothing to add to what was there said.'

"Schouler, in his work on wills, disposes of the subject in one brief section as follows: 'The declarations of a testator, before or after making a will, are inadmissible on the issue of its execution.'" Section 317a. To the same effect, see *Jones v. McLellan*, 76 Me. 49; *Kennedy v. Upshaw*, 64 Texas, 411; *Runkle v. Gates*, 11 Ind. 95; *Davis v. Davis*, 123 Mass. 590; *Kitchell v. Beach*, 35 N. J. Eq. 446; *Herster v. Herster*, 122 Pa. St. 239; *Caeman v. Van Harke*, 33 Kan. 333; *Johnson v. Hicks*, 1 Lans. (N. Y.) 150, and *Couch v. Eastman*, 27 W. Va. 796. In the case last cited, the court, after exhaustive review of the authorities, says, 'we have not found a single case that warrants the introduction of such evidence.'

"Under the law, thus well settled, we can but conclude that the declarations_ of John W. Price, as testified to by Mrs. Kendrick bearing upon the execution of the will, were inadmissible."

The declarations of the deceased being excluded from the deposition, there was nothing in the case calling for an instruction upon that subject, consequently the second instruction, which should have been confined to those declarations, was properly refused. This brings us to the real difficulty in the case, which arises under the second head of the assignment of errors.

II. Our statute requires that "Every will shall be in writing, signed by the testator, or by some person, by his direction, in his presence, and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." R. S. 1889, sec. 8870. That this statute is imperative and that no instrument can be established as a will without a substantial compliance with its requirements, is beyond question. *Catlett v. Catlett*, 55 Mo. 330. Whether they have been complied with or not is a

question of fact to be determined by the jury upon legal evidence in a proceeding under the statute to contest the validity of a probated instrument, when a jury is required as in the present case. R. S. 1889, secs. 8888 and 8889.

The province of the court before whom the issue was tried, and whose action alone is subject to our review, was not to determine the sufficiency of the evidence to establish the facts essential to a due execution of the will or the credibility of the witnesses giving it—this belonged exclusively to the jury—but to submit that issue to the jury when a *prima facie* case was made by competent legal evidence tending to prove that all the requirements of the statute had been complied with, and the immediate question before us is, was the evidence hereinbefore set out, *minus* the declarations made to Mrs. Kendrick, sufficient to make out a *prima facie* case of proper execution of the instrument and to warrant the court in submitting that issue to the jury.

The case made by that evidence, briefly, is that Judge John W. Price, aged about 74 years, of sound mind, a money lender, an intelligent man, of property, and conversant with affairs, but who had some years before met with a railroad accident and was suffering from neuralgia and "risings" in one of his sides and had to rely upon his daughter Katie, one of the respondents, to do most of his writing, was, in the fall of 1886, living with his family at his home in Chariton county, and had then in his possession the instrument of writing propounded as his last will, which upon its face bears evidence that it was prepared under the direction of a mind familiar with such matters. This instrument, in apt language and in due form, with his name signed in the proper place at the bottom of it, all, including the signature, in the handwriting of his daughter Katie, he first presents to his near neighbor,

Walton v. Kendrick.

Venable, whom he had requested to call for that purpose, to whom he said, in substance: "This is my will; it is not necessary that you should read it." "I want you to sign it as a witness." The witness attests it and departs. On a subsequent day he presents the same instrument, also at his home, to Moorman, his family physician, and says: "This is my will; I had it written and I want you to sign it as a witness." That witness attests it and departs. Subsequently he presents the same instrument, at the same place, to another neighbor, Broaddus, whom he had called to witness his will, to whom he said it was his will and he would like him to sign it as one of the witnesses, and that witness attests it. Subsequently his old friend and relative, Ingram, being at his house on a visit, he presents the same instrument to him, tells him that it is his will, and that he wants him to witness it, and he attests it. These repeated declarations of Judge Price, who may reasonably be inferred from the evidence to have known the requirements of the statute, made in the most solemn manner, in performing the most solemn act of his life, when considered in the light of all the circumstances by which he was surrounded when they were made, and when the instrument was written, and his name signed thereto, surely in reason, must afford some evidence that his name was signed to the instrument by his direction and in his presence.

Yet in the face of the case thus made, counsel for contestants contend that there is in this record no proof whatever that the name of John W. Price was so signed. The cases to which we are cited in support of this proposition from other jurisdictions, except *Burwell v. Corbin*, 1 Rand. (Va.), 131, are under variant statutes differing from ours, as are many of those cited for the proponents, and shed but little light upon the controversy. The single case cited from this court,

*Catlett v. Catlett, supra,* gives it no support whatever; for, in that case, the instrument propounded was not signed at all, and the point ruled was simply that the signing required by the statute was the affixing of the testator's name at the bottom of the will, either in his own handwriting or in that of someone else in his presence, and by his direction.

The Virginia case of *Burwell v. Corbin,* under a statute like ours, which is almost a literal transcript of 29 Car. 2, in respect of the matter in hand, does give support to plaintiff's contention, but this was the decision of a divided court, upon a special verdict, vigorously dissented from by Judge ROANE, and virtually overthrown after being much thrashed over in subsequent cases in the Virginia court of appeals, all of which are cited in the notes to 3 Lomax's Digest [2 Ed.], pp. 44 to 49, secs. 14 and 16, where the cases are reviewed, and the doctrine of the Virginia cases under that statute, so far as it is pertinent to the present inquiry, correctly stated by Judge Lomax to be, "That the instrument, whether signed by the testator himself or by another person for him, is sufficiently attested upon the acknowledgment of the testator that such instrument is his will; that proof of such an acknowledgment is evidence from which a court of probate, or a jury, may infer the fact that the instrument was signed by the testator, or was signed by another person for the testator in his presence, and by his direction, as the case may be."

The question in hand early came under the consideration of the supreme court of Kentucky, under a like statute, 2 Digest Kentucky Statute, 1822, page 1242, in the case of *Cochran's will,* decided in 1814, 3 Bibb, 491, in which that court held: "The subscribing witnesses all prove the acknowledgment of the testator that this instrument was his will, and in his presence attested

the same. This is a substantial compliance with the law. A will written and signed by the testator himself, attested by the proper number of witnesses, who can prove its execution only from the acknowledgment of the testator at the time of their attestation, though they did not see him sign it, and his handwriting could not be proved, yet it is believed would be held sufficient. And it is conceived that proof of the testator's name being signed by another under his direction who proves that fact, can not operate more unfavorable to the validity of the will, than where proof of the signature or by whom it was written can not be made, provided the requisite number of witnesses have attested it, and prove the acknowledgment of the testator at the time of their attesting it as his will." The doctrine here announced has been uniformly maintained in the subsequent decisions in that state under that statute. *Shanks v. Christopher* (1820), 3 A. K. Marsh. 144; *Sarah Miles' Will* (1836), 4 Dana, 1; *Upchurch v. Upchurch* (1855), 16 B. Monroe, 102.

The Virginia statute seems to have been the common source from which the Kentucky statute of wills, 1797, *supra*, and that of Missouri were originally taken (2 Laws of Missouri, 1825, p. 790) and all are substantially enactments of the English statute.

While the precise question under consideration has never been directly and authoritatively passed upon in this state, yet the principles decisive of it seem to have been well settled in harmony with the rulings in the English courts and those of Virginia and Kentucky.

In *Cravens v. Faulconer* (1859), 28 Mo. 19, this court, speaking through RICHARDSON, J., said: "It is manifest that the provision of our act in question was borrowed from the British statute, which has so often been under the consideration of their courts, that it has

become well settled by a long continued and uniform construction, which we can not disregard. The witnesses must subscribe their names in the presence of the testator in order that they may not impose a different will on him; but it is not necessary that they shall attest the very act and *factum* of signing by the testator. Though he must do some act declaring it to be his will, no particular form of words is required; and it is uniformly held that it is not necessary that the testator shall actually sign his name to the will in the presence of the attesting witnesses; but the acknowledgment, by the testator, that the name signed to the instrument is his, or that the paper is his will, is sufficient. 1 Jarman on Wills, 72; 1 Powell on Devises, 83; 4 Kent, 516; 2 Greenleaf on Ev., sec. 676." To the same purport is the recent case of *Grimm v. Tittman*, 113 Mo. 57.

The principle announced in all these cases is simply a recognition and affirmance of the doctrine laid down in *Ellis v. Smith*, 1 Ves. Jr. 11 decided in 1754 by the high court of chancery of England after a review of all the precedents, and which was thereafter uniformly followed in the English courts so long as the statute of Charles II. on this subject remained unchanged.

From the authorities on this statute, English and American, but one deduction can be logically drawn, and that is, that an instrument of writing purporting to be the will of a person of sound mind and lawful age, signed at the bottom with the name of the testator and attested by the requisite number of witnesses in his presence, may be established as his last will and testament on the evidence of such attesting witnesses that he acknowledged before each of them, separately or together, that such instrument was his will, without further proof. The application of this principle does

not depend upon the physical fact of signing; it applies all the same, whether the instrument was signed by the testator by his own hand, or by that of another at his request and in his presence; the acknowledgment has just the same probative force in the one case as in the other, and the removal of that probative force as to either mode by other proof that it was not signed in *one* of these ways, does not, and can not, destroy the probative force of the acknowledgment that it was signed in *the other way;* and, to prove that the signature to a will thus acknowledged was not in fact made by the hand of the testator, has no more tendency to prove that the will was not signed by another at his request, in his presence, than proof that it was not so signed by another has to prove that it was not signed by the testator in his own proper hand.

This is not "consequence built upon consequence" but an inevitable and immediate deduction from the premises. It is not the mere physical act of signing that the witnesses attest; it is that the instrument signed with the name of the testator is his will. *Withinton v. Withinton,* 7 Mo. 589; *Cravens v. Faulconer, supra; Harris v. Hays,* 53 Mo. 90; *Norton v. Paxton,* 110 Mo. 456; *Grimm v. Tittman, supra.* That fact they are warranted in attesting upon the declaration of the person whose name is signed to the instrument (he being of sound mind and lawful age) that the instrument so signed is his last will and testament, although they neither saw him subscribe his own name to it in proper person, or another subscribe his name thereto at his request and in his presence.

Proof of this acknowledgment by the deceased before the required number of attesting witnesses, made by them that he was of lawful age and sound mind and that they signed their names as witnesses to the instrument in his presence and at his request under our law

makes a *prima facie* case, entitling the instrument to go to probate in the first instance, and upon a contest under the statute makes a case entitling the instrument to go to the jury as *prima facie* the will of the testator. To them is, then, intrusted the solemn duty of finally determining, upon the whole evidence, whether the instrument is the will of the testator, which it can not be, unless signed in one or the other modes designated by the statute. That it was so signed, however, need not be proved by positive and direct testimony, but may be established, as any other fact, by circumstances from which it may be legitimately inferred; of which the acknowledgment must always be one of the most convincing that it was in fact signed in one or the other of the modes provided for by the statute.

For a decade in the history of Missouri the law in regard to wills signed by another for the testator was different, requiring additional proof in such cases. In the revision of 1845, chapter 185, section 5, a new section was adopted, requiring that: "Every person who shall sign the testator's name to any will, by his direction, shall subscribe his own name as a witness to such will, and state that he subscribed the testator's name at his request." It was under this statute that the cases of *McGee v. Porter*, 14 Mo. 611; *St. Louis Hospital Ass'n v. Williams' Adm'r*, 19 Mo. 609; and *Northcutt v. Northcutt*, 20 Mo. 266 were decided; and, even under that statute, it was held that there need not be an express direction, but that such direction might be proved by circumstances. 19 Mo. 612.

It needed, however, but a brief experience of the dangers of innovation upon well established and well understood rules for the government of persons who, in contemplation of death, desired to make disposition of their property by will, as illustrated in those cases, to induce our lawmakers to return to the well approved

methods of their fathers, and this section was dropped from the revision of 1855, and never since has found a place among our statutes.

From the evidence in this case there is reasonable ground for the inference that Judge Price was familiar with the statute, and knew its requirements. There can be no doubt that he intended the instrument to be his last will and testament, and thought it was executed in accordance with its requirements, and all the evidence in the case tends to show that it was. His testamentary intentions ought not to be defeated by a narrow and technical construction of the statute, and can not be defeated by evidence which tends to prove that his will was not signed in one of the ways provided by the statute, but which in no way tends to prove that it was not signed in the other, but tending strongly to prove that it was so signed.

We, therefore, conclude that the trial court committed no error in refusing contestant's first instruction, nor in permitting the instrument to go to the jury on the *prima facie* case of its proper execution made by the evidence introduced by proponents. So that the only error we find in the trial was the admission of the declarations of the testator as to the manner in which the will was signed. As the acknowledgment of the testator is not conclusive evidence that the instrument was executed in the mode provided by the statute, but only evidence from which the jury would be warranted in inferring that the instrument was so executed, and, as in this case they might not have drawn such inference but for this evidence, notwithstanding the acknowledgment was strengthened by the other facts and circumstances in evidence, the judgment for this error will have to be reversed and the cause remanded for new trial, and it is accordingly so ordered. All concur, except BARCLAY, J., absent, and

BURGESS, J., not sitting. GANTT and SHERWOOD, JJ., concur in this opinion; BLACK, C. J., and MACFARLANE, J., in the result, each in a separate opinion.

BLACK, C. J. (*concurring*).—As said by this court when speaking of our statute concerning wills: "It is uniformly held that it is not necessary that the testator shall actually sign his name to the will in the presence of the attesting witnesses; but the acknowledgment by the testator that the name signed to the instrument is his, or that the paper is his will, is sufficient;" nor is it necessary that the witnesses shall sign in the presence of each other. *Cravens v. Faulconer*, 28 Mo. 19. As to the attestation, it can make no difference whether the will is signed by the testator himself, or by some other person by his direction and in his presence. In either case the attestation is good and sufficient, if the testator acknowledges the instrument to be his will, and the witnesses sign it in his presence. In short, the witnesses attest a signed will, and not necessarily the various steps leading to its execution. This, it seems to us, is the necessary result of the rulings of the courts often repeated, that the witnesses need not attest in the presence of each other or attend the ceremony of signing by the testator. A will may be well attested, though the attesting witnesses can not depose to all the facts essential to a good signing by or for the testator. This is especially true in cases like the one in hand, where the name of the testator was not signed by himself, but was signed by another.

Where the testator produces an instrument, purporting to be his will, and declares that it is his will, and requests the witnesses to attest it, the declaration to them that the instrument is his will is evidence that he signed it; and, should it appear that he did not sign it himself, but that his name was signed thereto by

another, the declaration is still evidence that his name was signed thereto by his direction; but, in such case, we do not see how his declaration, standing alone, can be any evidence that the name of the testator was signed in his presence. To so hold is to build up a presumption from a presumption.

In the case in hand it clearly appears the testator did not sign his name to the paper propounded as his last will. His name was signed by another. He, however, presented it, thus signed, to the several attesting witnesses and declared to each of them that the paper was his will, and the witnesses attested it at his request. This declaration of the testator that the instrument was his will, as shown by the testimony of the attesting witnesses, is evidence tending to show that his name was signed thereto by his direction; but, standing by itself, it does not, in our opinion, show, or tend to show, that the testator's name was signed in his presence. The question, then, is, whether there is any other evidence in the case which justified the court in submitting the issues to the jury.

The other circumstances in evidence are these: The will, including the name of the testator, was written by his daughter Katharine. The will bears date the eighteenth of November, 1886, and was attested about the same date. Some of the attesting witnesses signed it in the presence of the wife of the testator and other members of the family, as well as in the presence of Mr. Price. It was in the possession of the testator from the date thereof until his death in April, 1890. One attesting witness says: "He said he had it written, but I don't remember that he said by whom." Another witness in the case, though not an attesting witness, testified: "Have seen him call on Katie to put his name to a paper or write an article." The will

Walton v. Kendrick.

was evidently dictated from first to last by the testator himself, and there can be no doubt but he intended it to take effect as his last will.   Taking these circumstances all in all we think there is evidence from which a jury might properly draw the conclusion that the daughter signed the name of her father to the will in his presence. The testator possessed more than ordinary business capacity.   The will was the result of his own judgment, and his name was written thereto by his direction.   He intended the instrument should take effect as his will.   There is no evidence tending to show that his name was not signed in his presence.   Under these circumstances, the will ought not to be rejected, as a matter of law, if there is any evidence tending to show that his name was signed in his presence.   We think the fact that this will was prepared according to his dictation at his own house, by his daughter who signed his name to other papers when requested to do so, is some evidence that she signed her father's name to this instrument in his presence.   The case made is, therefore, one for the jury, in the opinion of the writer.

MACFARLANE, J. (*dissenting*).—It is not insisted that the formalities required by the statute in order to the due execution of a will can be dispensed with and the mere acknowledgment of the testator substituted therefor. In order, therefore, to give effect to the statute, in case the name of the testator is subscribed by another for him, it is essential to the perfection and validity of the instrument that it be signed by the direction of the testator and in his presence.   That being so, it follows that a writing not so signed can not be given validity by adoption, however solemnly made. If the name of Col. Price was not, in fact, written in his presence, and at his request, it was not his will, and no declaration

afterwards made by him to the contrary, would change its legal character or effect. I understand the majority of the court agree to these propositions.

It is also well settled that the burden of proof is on the proponents of the will to prove its due and legal execution. *Norton v. Paxton*, 110 Mo. 456; *Gay v. Gillilan*, 92 Mo. 255; Schouler on Wills [2 Ed.], sec. 239. I agree that the sole question on this branch of the case is whether there was competent, legal evidence, offered by proponents sufficient to make *prima facie* proof that the instrument in question was executed in the manner prescribed by the statute. I agree that the declarations of the testator made at the time of the attestation of the will, were admissible as part of the *res gestæ*. When witness Moorman attested the writing, Col. Price stated that he had it written. This declaration, I may admit, tended to prove that the instrument was both written and signed by the direction of the testator; but I think no one can fairly claim that it, taken alone, had the remotest tendency to prove that the name was subscribed thereto in his presence. When we undertake to make the simple declaration of Col. Price that the instrument was his will, evidence that it was executed under all the formalities required by the statute, we virtually throw aside the statute altogether, and make a will by mere adoption. We could with equal propriety dispense with the attestation of witnesses.

The evident design of the statute, in requiring these formalities, when the name of a testator was written by another, was to prevent, as far as possible, the perpetration of frauds and impositions upon the ignorant and illiterate. But the statute does not confine its requirements to that class of persons. The requirements apply equally to the educated and intelligent business man. Nor are the rules of evidence,

or its weight given flexibility to suit the intelligence or or ignorance of the testator. I have no doubt that the paper declared by Col. Price as his will made a disposition of his property according to his intention and wishes. Had he been unable to read or write, and barely competent to make a will and had the daughter who wrote the will and signed his name to it, been the principal legatee, to the substantial disinheritance of brothers and sisters, no more and no less evidence of its execution would have been required. More weight would doubtless be given to the declarations of an intelligent, than to those of an ignorant, person, but the competency of the evidence of each would be the same. I am unable to see that the declaration of Col. Price had the the least tendency to prove that his name was signed to the writing in his presence, notwithstanding his intelligence, his business capacity, and his strong will. These could only give weight to declarations, which would have been evidence if spoken by the most illiterate. If a declaration does not tend to prove a fact, the character of the person making it is wholly immaterial.

The other circumstances shown by the evidence are that the testator, from bodily affliction, was unable to write with ease and his daughter Mrs. Kendrick generally acted as his amanuenis. They lived in the same house. The will was written some years before the death of the testator, and during the time was kept in his possession. This evidence tends to prove that the will was written and signed by the direction of the testator and that he was satisfied with the disposition he had attempted to make of his property; but I am at a loss to see the least tendency it has to prove the fact that the will was signed by Mrs. Kendrick in his presence. The circumstances were as consistent with one theory as the other. They tended to prove neither. The burden of proof was on the proponents. I think there was no evi-

dence tending to prove the due execution of the will, and, therefore, I do not concur in the second paragraph of the majority opinion, or in the concurring opinion of the learned chief justice.