Norton v. Paxton.

---

NORTON *et al.*, *Appellants*, v. PAXTON *et al.*

### Division One, June 6, 1892.

1.    **Will:** TESTAMENTARY CAPACITY: BURDEN OF PROOF. The burden of proving testamentary capacity in a proceeding to contest a will is on the proponents of the will, and it is not shifted by proof of the fact of the will and testamentary competency by the attesting witnesses.

2.    ———: ———. A person, though aged and infirm, who is able to transact his ordinary business affairs, and who has a mind and memory capable of presenting to him his property, and the persons who come reasonably within the range of his bounty, has a sufficient capacity to make a will.

3.    Supreme Court Practice: INSTRUCTION: HARMLESS ERROR. When the verdict is so clearly right on the evidence that an opposite one should be set aside, the supreme court will not reverse the judgment because of error in the instructions on the question of the burden of proof.

4.    **Will:** UNDUE INFLUENCE. The influence, to invalidate a will on the ground of undue influence, must be such as amounts to moral coercion.

5.    ———: ———. The influence of affection and attachment arising from kindness to the testator is not undue influence in a legal sense.

*Appeal from Caldwell Circuit Court.*

AFFIRMED.

*William A. Wood* for appellants.

(1) The testator having been shown by the evidence to be under the influence of devisees, the burden of proof as to capacity of said testator to make a valid will was shifted, and it rested upon those claiming under the will to prove by a preponderance of the evidence that the testator, at the time of making the will, had sufficient mental capacity to do so. It was, therefore, error for the court to give defendants' instruction, numbered 3, which violates this doctrine. *Gay v. Gillilan*, 92 Mo. 262; *Garvin's Adm'r v. Williams*, 44 Mo. 478; *Harvey v. Sullens*, 46 Mo. 147. (2) The court erred in giving the sixth instruction on the part of defendants, which took from the jury the question of undue influence. The provisions of the will, the oral evidence, and the circumstances surrounding Dr. Norton at the time he attempted to make a will, all go to prove that the defendants had gained and exercised an undue influence over his mind to the exclusion of his natural heirs. "A slight circumstance may furnish a sufficient legal warrant for an inference against the will, and if the jury draw such an inference it is fatal to the will." The evidence in the case at bar discloses circumstances not slight, but strong, to warrant the inference of undue influence by defendants over the testator, and the court committed error in taking them from the jury's consideration. *Mueller v. Hospital Ass'n*, 5 Mo. App. 390; *Elliott v. Welby*, 13 Mo. App. 19; *Harney v. Sullens*, 46 Mo. 146.

*J. F. Harwood*, also, for appellants.

(1) The burden of proving the execution of the will and sufficient mental capacity of the testator is on the defendants. *Cravens v. Faulconer*, 28 Mo. 19;

*Elliott v. Welby*, 13 Mo. App. 19. Because of this burden the defendants are given the opening and closing in the argument to the jury. *Tingley v. Cowgill*, 48 Mo. 291; *Benoist v. Murrin*, 58 Mo. 321. The third instruction violates this principle, in that it shifts the burden of proof upon the contestants, and in giving it the court committed error. (2) The fourth instruction given on the part of the defendants is clearly inconsistent with the fourth instruction given on the part of the plaintiffs, which properly declares the law. *Young v. Ridenbaugh*, 67 Mo. 574. (3) The fifth instruction given on the part of the defendants is in conflict with the fourth instruction given on the part of the plaintiffs. (4) The court erred in giving the sixth instruction on the part of the defendants which took from the jury all consideration of the question of undue influence. There was evidence of undue influence in the provisions of the will as well as in the oral testimony, and the circumstances surrounding Dr. Norton at the time he made the will. *Mueller v. St. Louis Hospital*, 5 Mo. App. 390; *Elliott v. Welby*, 13 Mo. App. 19; *Harvey v. Sullens*, 46 Mo. 146. And it was improper for the court to exclude these facts. (5) It was an error for the court to give the seventh and eighth instructions on the part of defendants. The seventh instruction tells the jury that the only issue in the case is whether the writing produced on the trial was the last will. In other words, was it the last attempt of Dr. Norton to make a will?

*Crosby Johnson* for respondents.

(1) After formal proof of the will by calling the attesting witnesses, the burden of proof shifted to the plaintiffs to show the imbecility of the testator. *Harris v. Hayes*, 53 Mo. 90; *Jackson v. Hardin*, 83 Mo. 175;

1 Redfield on Wills [3 Ed.] pp. 31, 32, par. 4; 2 Jarman on Wills [Perkins' Ed.] p. 72; 3 Greenleaf's Evidence, sec. 689. (2) The contents of former wills were admissible for purpose of showing a fixed purpose at a time when there was no question about the competency of Dr. Norton to make a valid will. *Thompson v. Ish*, 99 Mo. 160. (3) The will being made in conformity to a fixed design, as evidenced by former wills and declarations, is the strongest evidence of capacity. *Couch v. Couch*, 7 Ala. 519; 32 Am. Dec. 602. (4) Relatives of a dead man have no equity to have a valid will set aside on mere sentimental grounds. *Jackson v. Hardin, supra.* (5) The undue influence which will invalidate a will must be such as amounts to overpersuasion, coercion or force, destroying the free agency and will power of the testator. *Jackson v. Hardin, supra; Fee v. Taylor*, 83 Ky. 259; *Pendlay v. Eaton*, 130 Ill. 69; *Wilbur v. Wilbur*, 129 Ill. 392.

BLACK, J.—This is a statutory proceeding to contest the will of Dr. Pryor N. Norton of Hamilton, Caldwell county. The plaintiffs are a brother, two sisters and a nephew of the deceased. Other brothers and sisters, nephews and nieces are made defendants; but the real defendants are Irene K. Paxton and Alice C. Bourse, who are the sisters of the deceased wife of the testator. He had no children.

The will now in question bears date the tenth of March, 1888, and the testator died of a lingering consumption on the twenty-second of the following April, leaving an estate consisting of real and personal property, valued at about $8,000. Aside from two small legacies, he devised all of his property to Irene K. Paxton and Alice C. Bourse, to have and hold free from the marital rights of their then or future husbands. The substantial averments of the petition are

that Dr. Norton, by reason of the weak condition of his body and mind, caused by disease and drugs administered to him, was not of a sound and disposing mind, and that the will was the result of the fraud and undue influence of the principal devisees.

The defendants produced the will and proved its execution, and that the testator was of sound mind by the three subscribing witnesses. Plaintiffs produced their evidence, and the defendants introduced a vast number of witnesses in rebuttal.

The third instruction given at the request of the defendants asserts the proposition that the law presumes that every man of mature age possesses the capacity to make a will, until the contrary is made to appear, and concludes with these words: "And the burden of proof is upon those who are disputing the validity of the will to show that Norton, at the very time of executing the will, had not the capacity to make a valid will, and, unless they have, by a preponderance of the testimony in the case, shown that Dr. Norton, at the time he made the will in dispute, was of unsound mind or did not have the capacity to make a valid will, then the finding of the jury must be that he had sufficient capacity."

The second, given at the request of the contestants, declares, among other things: "Unless the jury find from the evidence that said deceased, at the time of the signing and acknowledgment of said paper writing, was possessed of a sound, disposing mind and memory, they must find the issues of fact for the plaintiffs."

By the sixth instruction, given at the request of the defendants, the court told the jury that there was no evidence tending to show undue influence exerted by the proponents of the will, and excluded that issue from their consideration.

The jury found the issues in favor of the propon-
ents, and the case is here on the contestants' appeal.

1.   The second instruction given at the request of
the contestants is so framed as to direct a verdict for
them, unless it appeared from all the evidence that
deceased possessed a disposing mind, while the one
given for defendants cast the burden upon the contest-
ants to show want of testamentary capacity.   They are
plainly conflicting, and one of them should have been
refused.

Much has been said in the books concerning the
burden of proof in these will cases.   Under our law the
proceeding to contest a probated will is in the nature
of an appeal and a trial *de novo*.   There can be no
doubt but it devolves upon those who claim under the
will to show that it was duly executed and attested,
and that the testator was of the requisite age.   *Cravens
v. Faulconer*, 28 Mo. 21; *Tingley v. Cowgill*, 18 Mo.
294.

In *Harris v. Hays*, 53 Mo. 90, it was said the
proper course is for the proponents of the will to intro-
duce the subscribing witnesses, and establish by them
the execution of the will and the sanity of the testator.
This makes out a *prima facie* case, and the burden of
establishing incompetency or undue influence rests then
on the contestants.   In the case of *Benoist v. Murrin*,
58 Mo. 322, the contestants admitted the genuineness
of the signatures of the testator and the witnesses, but
did not admit the sanity of the testator.   This court
denied to contestants the right to open and close, and
in clear and unqualified terms held that it devolved upon
those claiming under the will to establish the sanity of
the testator.   It also held that this burden was not
shifted during the trial by proof of the factum of the
will and testamentary competency by the attesting wit-
nesses, but remained with the party setting up the will.

*Jackson v. Hardin*, 83 Mo. 178, is cited as asserting a different rule, but we do not so understand that case.

It is sufficient for those who claim under the will to make out a *prima facie* case in the first instance. There is a presumption that every adult person is *compos mentis*, but the presumption is one of fact only. It may be that the production of a will, reasonable on its face, with proof of due execution and attestation, and that the testator was of full age, will make out a *prima facie* case on the part of the proponents, thus giving full force to the presumption, though the usual course is to offer some evidence of mental capacity. The parties claiming under the will having made out a *prima facie* case, the contestants must bring forward their evidence. But it does not follow from all this that the burden of proof shifts. It remains with those claiming under the will.

As said by Mr. Schouler: "And the larger and better class of American authorities point, moreover, to the conclusion that the court or jury trying the case must, upon the whole evidence, be satisfied that the testator was of sound mind; so that, if there be inevitable doubt left on this point from all the testimony, the will cannot be considered as proved." Schouler on Wills, sec. 174. This is in accord with the previous rulings of this court. It follows that the instruction given at the request of the contestants is correct, and the one given at the request of the defendants is wrong.

2. But we think the judgment should not be reversed for the error just mentioned, because the verdict was clearly for the right party. The will, it is to be remembered, bears date March 10, 1888, and Mrs. Paxton and her husband then lived with Dr. Norton in his house. The evidence to show incapacity is, in substance, this:

Mrs. Crall, one of the contestants, testified: "I visited my brother the last of January, 1888; he was then just able to get out of bed and walk into the other room; I don't think he had ever taken any medicine; he had often said a man's mind would go down with his body; I thought his mind was going down then; I think he knew all he was doing; said he intended to make a will, that Bob and Irene said something about going on the farm, and when he got up they should do so; that he didn't want them sitting around trying to get into a dead man's shoes; he was taking whiskey and morphine." She says she saw him again about three weeks before he died, that is to say three weeks before the twenty-second of April; that he was then feeble; would talk to her and then go to sleep, rise up and talk the same subject over again; that she thinks Mrs. Paxton said she was giving him double doses of morphine.

Stephen Norton, one of the plaintiffs, saw his brother during the latter part of January. He says: "Don't think his mind was very good; he would talk about things and I would go out of the room, and when I went back he would talk the same thing over, just as though he had not spoken of it before; he talked about his boyhood days in Kentucky; his mind seemed to run that way." Says he saw his brother again in February, and in March, and, being asked what was the condition of his brother's mind on his last visit, he said: "I don't know, only he made the remark to me that my house had burnt, and wanted to know if I had got a new one. I said, no. He said, if he had been up he would have had me one." The witness' house had been destroyed by fire. This witness testified further that he did not think his brother was in a condition to transact business in February or March; that a man called for medicine and his brother said, send the man to some other physician.

It appears Mrs. Bourse came to the house after the date of the will. She and Mrs. Paxton did not admit all persons who called to see Dr. Norton. Stephen Norton did the same thing. They all acted on the advice of the attending physician. Much other evidence was introduced by the contestants, but it adds nothing to that which has been recited.

On the part of the defendants the three attesting witnesses testify in strong terms to the effect that Dr. Norton talked with them at the time he signed the will; that he knew perfectly well what he was doing, and that his mind was "very clear."

From the other evidence it appears Mrs. Norton died in 1885 or 1886. The title to the land stood in her name, but she conveyed the property to Norton just before, and in anticipation of her death. It does not appear whether this property was acquired with his or her money, or was the result of their joint labor. It appears the two girls, Irene and Alice, lived with them before the death of Mrs. Norton, and that Mrs. Paxton lived with Dr. Norton after his wife's death, and kept house for him. He made two wills after the death of his wife, by each of which he made these girls his principal devisees. He then made a third one, the purpose of which was to name a different person as executor. Some six weeks before the date of the will now in question, he executed another will whereby he put the property in the hands of a trustee to pay over the income to Alice and Irene, with remainder to their issue, and in default thereof to his brothers and sisters. After considering the matter, he concluded to give the property to the girls free of complications, and this he did by the will now in question. It is shown by various witnesses that he often said he brought the girls to this country; that they had been kind to him, and he intended to leave his property to them.

A large number of persons, neighbors and physicians, saw him just before and after he executed the will in question. They say he talked upon various subjects, and to the physicians he talked about the treatment of various cases. They all say that, though he was weak, his mind was clear and bright. One witness had business transactions with him on two occasions in the month of March. He relates these transactions, and says Norton's mind was as good as he ever saw it, as good as it was when up and about.

Dr. Snider says he prescribed for the deceased during January, February and part of March; that he did not give him any morphine. Dr. Alpine says the deceased first tried whiskey, but did not like and would not take it; that the morphine was first administered after the date of the will and then in small doses of one-sixteenth of a grain, three times in twenty-four hours; that a half dose was added on some occasions towards the last, and that deceased took small quantities of whiskey a week or two before he died.

It does not follow because a person is advanced in years, or is suffering from some disease, that he is incapable of making a valid will. Such facts are, of course, to receive due consideration. But a person, though aged or infirm, who is able to transact his ordinary business affairs, and who has a mind and memory capable of presenting to him his property and those persons who come reasonably within the range of his bounty, has a sufficient capacity to make a will. Though expressed in various words, such is in substance the rule often asserted. *Benoist v. Murrin*, 58 Mo. 308; *Thompson v. Ish*, 99 Mo. 180, and cases cited. Here it is conceded that the testator was, up to the time he became confined to his room, a man of strong mind and good business qualifications. Two months after

this confinement he called in his legal adviser and dictated this will. As to the alleged use of narcotics, the weight of the evidence is that he did not take morphine until after the execution of the will, and then only in small doses. Though Mrs. Crall says she thought her brother's mind was going down in January, yet she says she thought he knew what he was doing. She relates no circumstance that has any decided tendency to show a want of testamentary capacity. About the only circumstance disclosed by the contestants, deserving of any consideration, is the one that Norton would in his conversations repeat the same incident. The other circumstances given in evidence are strong to the effect that the disease had not impaired his mental strength at the date of the will. Add to this the opinions of his neighbors and brother physicians, and the evidence is quite conclusive against the contestants on this issue of mental capacity. Any verdict finding that Norton did not possess testamentary capacity when he made this will ought to be set aside, and this being so the cause should not be remanded, though the court did err in its instructions as to the burden of proof.

3. The further contention of the contestants is, that the evidence tends to show that these girls had gained an undue influence over the mind of the testator, so as to induce him to cut off his natural heirs, and, hence, the issue of undue influence should have been submitted to the jury. There is, in the first place, no evidence that they, in any way, dictated this will. They had resided with him before the death of his wife, and thereafter Irene and her husband had resided with him. On the other hand it stands conceded that the property was conveyed to him by his wife just before her death. These girls were always kind to him in his afflictions. Under these circumstances they were quite as much the natural objects of his bounty as his own

brothers and sisters. The wills which he had previously made show a settled purpose to give his property to these girls; for, although they differed in the manner of settling the property upon them, they all had the same general object in view. That these devisees had gained his affection by their kindness must be conceded; but the influence of affection and attachment arising from kindness is not undue in a legal sense. To invalidate a will on the ground of undue influence, the influence must be such as to amount to moral coercion. It must be of such a character as to destroy the testator's free agency, and substitute for his will the will of another person. This is certainly so in the case of a wife or child. *Thompson v. Ish*, 99 Mo. 160, and cases cited.

But this principle is not confined to cases where that relation exists. Says Schouler: "Nor is fraud or imposition to be imputed solely on the ground that the testator depended much upon the legatee for the management of his affairs and attendance to his personal wants. Indeed, lawful influence, such as grows out of legitimate or social relations, must be allowed to produce its natural fruits even in wills. The presumption favors a lawful, rather than unlawful, exercise of influence under such circumstances; and the exertion of a natural influence upon the testator can never afford adequate ground of itself for setting a testament aside." Schouler on Wills, sec. 230.

Guided by the foregoing principles of law, there is in our opinion no evidence in this case which made it the duty of the court to submit the issue of undue influence to the jury. The judgment is affirmed. All concur.