WILLIAM B. MAJOR et al. v. LELIA M. KIDD et al.; LELIA M. KIDD, and LELIA M. KIDD as Executrix of Last Will of BENJAMIN R. MAJOR, Appellants.

In Banc, November 17, 1914.

1. **WILL CONTEST: Careful Consideration of Evidence.** Courts give careful consideration to the evidence in cases contesting the validity of wills, to the end that it may be seen that there is substantial testimony upon the issues of either mental incapacity or undue influence; and especially, to the testimony concerning incapacity, for the reason that opinions of lay witnesses often furnish the basis for the verdict.

2. ———: **Law Case.** A will contest is a trial of issues of law, and is governed by the rules of law applicable to legal actions.

3. ———: ———: **Incapacity: Substantial Evidence.** If there is substantial evidence tending to support the charge of testator's mental incapacity to make the will in contest, the verdict of the jury, the instructions being proper, is binding upon the appellate court.

4. ———: ———: ———: ———: **Contestants' Testimony.** If the evidence adduced by contestants upon the issue of testator's mental incapacity is substantial, the issue then becomes a matter for the jury, notwithstanding the contradictory proof produced by proponents.

5. ———: **Undue Protest of Mental Soundness.** Where the will states testator is "now in unusual strength of body and mind," that "I am now in the fuller enjoyment of all my faculties than for many years past" and that "the added years have not lessened my mental faculties," it earmarks itself with a question of his sanity.

6. ———: **Incapacity.** Evidence that testator in 1859, in robust health, both bodily and mentally, was the owner and manager of an exceedingly large farm; that within that year he became mentally unbalanced, and after three physicians had consulted upon his case, he was taken to an asylum for the insane, where he remained for more than a year; that from the day of his return to his death, in 1910, at the age of 93, he attended to none of the business upon that farm, but it was attended to wholly by his wife and brother; testimony of two doctors who had occasion to see and converse with him, and give it as their opinion that he was of unsound mind;

testimony of men and women who worked upon the farm, detailing facts which authorize them to express an opinion as lay witnesses and who testify that he was of unsound mind; and testimony of many neighbors, who knew him both before and after he became insane in 1859, and who testify that in their judgment he was of unsound mind during all the years from 1860 to the day of his death, is substantial evidence requiring the issue of his mental capacity to make a will in 1889 and to add a codicil in 1897, to be submitted to the jury.

7. ————: **Sound Mind: Burden of Proof.** The burden is upon the proponents of the will to show that testator was of sound mind. It is not error to instruct the jury that the burden rests upon the proponents to prove, by the greater weight of the credible evidence, that testator, at the time of making the will, possessed a sound disposing mind. The burden is not met by making out a prima-facie case, but remains upon proponents throughout the trial. [Following Goodfellow v. Shannon, 197 Mo. l. c. 278 et seq., and reviewing all the cases.]

8. ————: ————: **Statute.** Because of the wording of the statute (Sec. 535, R. S. 1909) declaring that "every male person, twenty-one years of age and upward, of sound mind; may, by last will, devise all his estate," etc., the question of mental capacity of testator is in all will cases. The burden of proving the testator's mental capacity is by said statute placed upon the proponents, not only in the probate court, but in the circuit court, for a will contest is but the probating or rejection of the will.

9. ————: ————: **Ordinary Affairs: Capacity and Necessity of Heirs.** An instruction telling the jury that if testator did not have sufficient soundness of mind "to understand the ordinary affairs of life" he was incapacitated to make a will, is not erroneous.

Held, by BROWN, J., that said instruction in requiring testator to understand the "capacity and necessity" of those who are the natural objects of his bounty, is erroneous, but as that part of the instruction is not relied upon by appellants it is not ground in this case for reversal.

10. ————: ————: **Adjudged Insane.** An instruction telling the jury "that under the law as it existed in 1859 and 1860, it was not required that a person be adjudged insane by any court or tribunal in order that he be placed in the insane asylum, but might be sent as a private patient upon the certificate of two physicians," even if technically erroneous, was harmless in this case, the facts being that testator was taken to an insane asylum in 1859 and remained there for over a year, and made his will in 1889, and the evidence of his incapacity being satisfactory.

Appeal from Pettis Circuit Court.—*Hon. Hopkins B. Shain,* Judge.

AFFIRMED.

*W. M. Williams, G. W. Barnett* and *Montgomery & Montgomery* for appellants.

(1) The court erred in refusing the peremptory instruction in the nature of a demurrer to the evidence asked by the defendants at the close of the entire testimony. There was no substantial evidence that, at the time of execution of the will and codicil in question, the testator did not have the requisite testamentary capacity. Winn v. Grier, 217 Mo. 420; Gibony v. Foster, 230 Mo. 106; Sayer v. Princeton University, 192 Mo. 95; Cash v. Lust, 142 Mo. 630; Hughes v. Rader, 183 Mo. 630; Wood v. Carpenter, 166 Mo. 465; Cutler v. Zollinger, 117 Mo. 92; Archambault v. Blanchard, 198 Mo. 384; Riley v. Sherwood, 144 Mo. 354; Berberet v. Berberet, 131 Mo. 399; Defoe v. Defoe, 144 Mo. 358; McFadin v. Catron, 138 Mo. 197; Fulbright v. Perry County, 145 Mo. 432; Aylward v. Briggs, 145 Mo. 604; Crossan v. Crossan, 169 Mo. 641. (2) Peculiarities and eccentricities, weakened mental and physical condition caused by age or disease, imperfect memory, failure to transact ordinary business and non-recognition of friends or members of the family at times, are wholly insufficient to show want of testamentary capacity. Gibony v. Foster, 230 Mo. 131; Sayer v. Princeton University, 192 Mo. 95; Winn v. Grier, 217 Mo. 420; Cash v. Lust, 142 Mo. 630; Archambault v. Blanchard, 198 Mo. 384. (3) The court erred in giving the second instruction on behalf of the contestants because it places upon the proponents the burden of proof at the close of the whole case on the issue of mental capacity. The law pre-

sumes sanity and after the attesting witnesses have been examined, it devolves upon the contestants to establish incapacity by the greater weight of the evidence. Jackson v. Hardin, 83 Mo. 182; Lindsey v. Stevens, 229 Mo. 614; Sehr v. Lindeman, 153 Mo. 288; Riggin v. College, 160 Mo. 597; Gibony v. Foster, 230 Mo. 131. (a) "The evidence of the subscribing witnesses showed that the testator was of lawful age, and of sound mind, as well as the due execution of the will. This made a prima-facie case for the proponents." Harris v. Hayes, 53 Mo. 96. (b) "After the proponents had established the execution of the will and the sanity of the testator by the subscribing witnesses, the burden then of establishing incompetency of the testator shifted and it devolved upon the contestants to overcome the presumption of sanity by persuasive evidence." Riggin v. Westminster College, 160 Mo. 579; Holton v. Cochran, 208 Mo. 410; Sehr v. Lindemann, 153 Mo. 276; Southworth v. Southworth, 173 Mo. 59; McFadin v. Catron, 138 Mo. 197; Fulbright v. Perry County, 145 Mo. 432. (c) While some cases in this State hold to the contrary, the principle upon which the courts hold that the contestants have the burden of proof is well stated in 1 Underhill on Wills, sec. 86. Garesche v. Boyce, 8 Mo. 228. (4) The fifth instruction required, as a test of the capacity to make a will, ability on the testator's part to comprehend "the ordinary affairs of life." While this language is used *arguendo* in some cases, it is not proper in an instruction to a jury. It opens too wide a door for speculations and conjectures. (5) Contestants' third instruction was erroneous and extremely prejudicial to the proponents of the will. It singled out and directed special attention to the fact that the testator, thirty years before the will was made, was taken to the asylum at Fulton, and authorized the jury to infer without evidence to that effect that this was done upon the certificate of two physicians; and in

connection with instruction 4, further authorized them to build upon this fact and presumption another presumption that he continued insane during the remainder of his life. (6) The court erred in giving instruction 4. It does not require the jury to find that the insanity referred to was of a permanent character, as a condition precedent to the presumption of its continuance. Richardson v. Smart, 152 Mo. 634, 65 Mo. App. 18; Buford v. Gruber, 223 Mo. 257; State v. Lowe, 93 Mo. 547; 22 Cyc. 1116, notes 23 and 24. (7) The will is fair, sensible and reasonable on its face. It makes no discrimination as to the children but names them all and gives them one dollar each. It then bequeaths the entire residue of the estate to his wife and gives a sufficient reason for leaving everything to her.

*George F. Longan* and *J. W. Suddath & Son* for respondents.

(1) "If plaintiffs show a state of facts which establish a fiduciary relation, or some such similar confidential relation, between the defendant, a principal beneficiary, and the testator, then upon that showing the burden shifts. Not only this but by the proof of such a relation, and such a bequest, the law indulges the presumption that undue influence has been used." Mowry & Kettering v. Norman, 204 Mo. 173; Bradford v. Blossom, 190 Mo. 143; Maddox v. Maddox, 114 Mo. 40. (2) The court did not err in refusing the peremptory instruction asked by defendant because: Whenever there is any substantial evidence of mental incapacity then the case must be submitted to the jury and the higher court will not disturb the verdict, although it deem it against the weight of evidence. Naylor v. McRuer, 248 Mo. 423; Roberts v. Bartlett, 190 Mo. 695; Turner v. Anderson, 236 Mo. 523; Crum v. Crum, 231 Mo. 626; Holton v. Coch-

ran, 208 Mo. 314; Mowry & Kettering v. Norman, 204 Mo. 173. (3) The burden is upon the defendant to establish the testamentary capacity of the testator by a preponderance of all the testimony, and this burden remains throughout the case. Mowry v. Norman, 223 Mo. 463; Turner v. Butler, 161 S. W. (Mo.) 745; Naylor v. McRuer, 248 Mo. 423; Mowry & Kettering v. Norman, 204 Mo. 173. (4) The court did not err in giving instruction 5, fixing test of mental capacity to make a will, and requiring "ability on the part of the testator to comprehend the ordinary affairs of life." Naylor v. McRuer, 248 Mo. 423; Crum v. Crum, 231 Mo. 626; Turner v. Anderson, 236 Mo. 523; Weston v. Hanson, 212 Mo. 248; Holton v. Cochran, 208 Mo. 314; Roberts v. Bartlett, 190 Mo. 680. (5) The court did not err in giving instruction 3, because it was a clean-cut statement of what the law on the subject under consideration was, at that time, and this is not disputed. R. S. 1855, p. 223. (6) The court did not err in giving instruction 4, because the evidence tended to establish an insane condition of mind existing and exhibiting its peculiarities for a long period of years. An instruction embodying this principle should be given. State v. Lowe, 93 Mo. 570.

GRAVES, J.—Action contesting the will of Benjamin R. Major, who died in Pettis county, November 24, 1910, at the advanced age of 93 years. He left surviving him, Sallie F. Major, and three children, William B. Major, Emma (Major) Short, and Lelia M. (Major) Kidd. The plaintiffs are the son of Benjamin R. Major, and his wife. The widow died shortly after the death of the husband, leaving a will. The defendants are the other two children, Mrs. Kidd and Mrs. Short, and Mrs. Kidd as executrix. The grounds of contest were (1) undue influence exercised over the testator by Mrs. Lelia M. Kidd, the daughter,

and Sallie F. Major, the wife; and (2) mental inca-
pacity.

Some singular expressions in the will and codicil
prompt us to set out the same in full. They read:

"I Benjamine R. Major, of Heaths Creek, Pettis
county, Missouri, *though now in unusual strength of
body and mind,* yet knowing from my advanced age
that my earthly pilgrimage nears its end, do declare,
and wish to have published, this, my last will and tes-
tament:

"First. After the payment of my funeral ex-
penses, and all just debts, I bequeath to my children,
Emma C. Short, Lelia M. Kidd, and Willie B. Major,
the sum of one dollar each.

"Second. After the payment of the above named
debts and bequests, I bequeath and devise all the resi-
due of my estate, both personal and real, of whatsoever
character and description, and wherever situated, at
the time of my death, to my beloved wife, Sallie F.
Major, to hold the same as her absolute property in
fee, with the right and power to use, enjoy and dispose
of the same, or any part thereof, by gift, sale, deed or
will, as to her may seem proper.

"My purpose and incentive in thus willing and
bestowing my estate upon my said wife being to ex-
press my recognition of her signal fidelity to me dur-
ing my married life, as also the fact that it is owing
to her good judgment, business management, industry
and untiring watchfulness through many years, that
my property has been preserved and improved in
value; and I have implicit confidence in her ability
and disposition to continue to so manage and dispose
of it as to best promote her welfare and good pur-
poses.

"It is owing to her tender care and wifely minis-
trations that, in my advanced age, my health is so
much restored *that I am now in the fuller enjoyment
of all my faculties than for many years past;* and I

leave this as a lasting testimony of my love and gratitude for and to her.

"Third: I hereby designate and appoint my said wife, Sallie F. Major, the sole executrix of this my last will and testament, and request and direct that she be not required to execute bond as such executrix, and that without making any inventory or appointment of my estate, she pay off and discharge any debts that may exist against my estate, and that she pay over to my said children the special bequests named in the foregoing will; and then apply the residue of my estate to her own use as hereinbefore willed.

"In witness whereof I have hereunto set my hand and seal, this 26th day of October, A. D. 1889.

"BENJAMINE R. MAJOR. (Seal.)

"I, Benjamine R. Major, of Pettis county, Missouri, do hereby make, declare and publish the present writing to be the codicil to the attached and foregoing my last will and testament, which bears date the 26th day of October, 1889.

## "ITEM I.

"Whereas, in the good providence of God my life has been spared many years beyond my expectations and *the added years have not lessened my mental faculties,* but they have deepened my affection for my beloved wife and shown the justness and wisdom of the devises made in the foregoing will to her, but her advancing age has also warned me that she may not survive me, and I desire during her lifetime and now, while I am of sound and disposing mind, to make a further direction about the descent and distribution of my property in the event that my beloved wife may not survive me.

"In doing so I hereby affirm and confirm the foregoing will and the statements therein contained and especially and particularly direct that nothing herein

contained shall in anywise, change, alter or affect the gifts and devises contained in the foregoing will in the event that my beloved wife survive me, in which event the whole of my estate shall pass and descend as by the foregoing will directed.

### "ITEM II.

"But if my beloved wife shall not survive me then it is my will and I hereby devise all my property, both real and personal, in the manner following, viz.:

"(a) I give and bequeath to my son William B. Major and his wife, Edmonia Major, all the right, title, interest and estate of which I may die seized of and in and to the lands constituting the farm where they now live, known as the Estill farm, and more particularly described as follows: The southwest quarter of the southwest quarter of section nineteen, and all that part of the northwest quarter section thirty, lying north of Heath Creek, and all in township forty-eight, and range twenty, in Pettis county, Missouri, and containing about one hundred and sixty-seven acres. This description is intended to include all of the place now used and occupied by my said son and his wife.

"To have and to hold during their lives and the full and free use and enjoyment of the same and the rent, issues and profit thereon so long as they or either of them shall live, and the remainder therein after the expiration of the life estate aforesaid to the child or children of their bodies, or their descendants surviving them, then to my residuary legatee and devisee hereinafter named.

### "ITEM III.

"To my daughter Emma, the wife of U. F. Short, the sum of five dollars, she and her husband having already received sufficient estate from my wife and myself.

## "ITEM IV.

"All the rest and residue of my estate, both real and personal, of whatever nature, I give, devise and bequeath to my beloved daughter Lelia M. Kidd, and if she should not survive me, then to her children share and share alike.

## "ITEM V.

"It is my intention and desire that should my beloved wife, Sallie F. Major, survive me then that my entire estate pass to her in accordance with the terms of my last will as hereinbefore stated and that she be my sole executrix, but in case she dies before I do, then the estate is to pass as by this codicil directed and my daughter, Lelia M. Kidd, shall be my sole executrix, and I request that in either event neither be required to give any bond as such executrix.

"In witness whereof, I, the said Benjamine R. Major, have to this codicil set my hand and seal this the —— day of November, 1897.

"B. R. MAJOR."

The trial court took from the jury the question of undue influence, but submitted the question of mental incapacity. The jury found against the will, and Mrs. Kidd individually and as executrix has appealed. Mrs. Short abided by the judgment *nisi*. The points made are (1) refusing a peremptory instruction to find for the will upon the ground of mental incapacity, and (2) alleged errors in other instructions. These in order in the course of the opinion.

I. The first problem confronting us is defendant's demurrer to the testimony. Courts look with care to

Will:
Rules for
Contest.

the testimony in will cases, to the end that it may be seen that there is substantial testimony upon either undue influence or the question of mental incapacity. Es-

pecially is this true of mental incapacity, for the reason that opinions of lay witnesses often furnish the basis for the verdict. Courts scan with care such opinion evidence to see that the witness has given a detail of such potent facts, tending to show mental incapacity, as will authorize the expression of an opinion. This and other things spur the courts to a diligent search of the evidence. The law gives one possessed of mental capacity the right to dispose of his property according to his own way of thinking, and it is not for courts or juries to make a will for him. But when this is said, all has been said, as to the prerogative of this court. If there is substantial evidence tending to support the theory of mental incapacity, the verdict of the jury (they being properly instructed) is binding upon this court. At an early date this court announced that the trial of a will case (whilst in a way different) was the trial of issues at law and not in equity, and therefore to be guided by the rules of law cases. The full case law upon this question has been so fully reviewed by our Chief Justice in the case of Turner v. Anderson in Banc, 260 Mo. 1, that we refer the anxious thereto, without further encumbering this opinion. I thoroughly agree to the views in the Turner case, supra. Measured by these rules, the question is, was there evidence sufficient upon the question of mental capacity to take this case to the jury upon that question? We think so. The details of such evidence we take next.

II.   The facts of this case are few and simple, although, owing to the great number of witnesses, the record is voluminous. We shall not, on this demurrer, discuss the evidence for the defendants. If the evidence adduced by contestants was substantial upon the question of mental incapacity, it then became a matter for the

Incapacity
of Testator.

jury, notwithstanding the contradictory proof from contestees.

To start with, this will is badly "ear-marked." Note some of the phrases. In the outset the will-maker, and we use the term advisedly, had the testator to declare that he was "now in *unusual strength* of body and *mind*." Why such declaration, if the mind was really sound? Why emphasize by use of the qualifying word *"unusual?"* Again the will-maker has the testator further declare "that I am now in the fuller enjoyment of all my faculties than for many years past." If it were true, why have him solemnly declare it in the will? Why necessary for a sane man to be persistently reiterating the fact of his sanity in his will? We know that wills frequently use the stock expression of "being of sound mind and memory," but we have never yet seen one wherein the writer undertook to so thoroughly impress the idea of testator's sanity. The same idea has drifted into the codicil. Note the language: "the added years have not lessened my *mental faculties.*" Speaking for myself personally I would question the mental status of any man who would append his name to a will so peculiarly worded as is the document presented here as the last will and testament of Benjamine R. Major. But let us leave individual views and get to further facts. The will was in evidence and the jury had the right to consider its terms for all purposes of the case. Then in addition it appears that in 1859 the testator was in robust health, both bodily and mentally. He was in active charge of an exceedingly large farm of his own. He was in truth and in fact the owner and manager thereof. But during the year he became mentally unbalanced, and after three physicians had consulted upon his case he was taken to the asylum for the insane at Fulton, Missouri. He remained there for more than a year, and then returned to the farm. From that day to the day of his death in 1910 he attended

to none of the business upon that farm. His brother and his wife attended to it all. These facts are conclusively shown by a score or more of witnesses. Two doctors, who had occasion to see and talk with him, give it as their opinion that he was of unsound mind. Men and women who worked upon the place say he was of unsound mind, and they detail facts which would authorize them to express an opinion as lay witnesses. Many of the neighbors, who knew him both before and after the sickness of 1859, when his mind went wrong, testified that in their judgment he was of unsound mind during all the years from 1860 to the day of his death. The plaintiffs and the defendant Mrs. Short testify to like effect, and these witnesses detail facts upon which their conclusions are based. In fact, the contestants not only introduced substantial evidence of mental incapacity, but it went far beyond the usual meaning of the term substantial evidence. There was no error in refusing the demurrer to the evidence.

III. For the contestants the court gave this instruction:

"The burden rests upon the defendant to prove, by the greater weight of all the credible evidence, that

Mental Capacity: Burden of Proof.

Benjamine R. Major, at the time of making the will in question, or at the time he made the codicil thereto, possessed a sound and disposing mind and memory, as defined in other instructions."

This instruction contestee says is error. It places the burden upon the proponents of the will to show the mental capacity of the testator. The writer was called upon to wrestle with this exact question on a previous occasion. [Goodfellow v. Shannon, 197 Mo. l. c. 278.] At that time we made an extended research of the cases in Misouri. We found some of our cases, wherein the question as to the burden of proof was not

before this court because not an issue on the record, in which we used some language which might be construed to mean that after a prima-facie case had been made the burden of proof shifted and was then on the contestants. Thus in Sehr v. Lindemann, 153 Mo. l. c. 288, we found this language:

"Under the Statute of Wills the owner of property is permitted to dispose of it as he chooses after his death. If he makes no disposition of it by will the Statute of Descents disposes of it for him. When a will is contested it devolves upon the proponents to prove the execution of the will, that the testator was of requisite age and that he was sane. [Harris v. Hays, 53 Mo. 90; Benoist v. Murrin, 58 Mo. 322; Norton v. Paxton, 110 Mo. 456.] This makes out a prima-facie case, and it then devolves upon the contestants to establish incompetency or undue influence."

But nowhere in that case was the question as to where the burden of proof fell further discussed. Nor had the question been raised by an instruction, as here. The sole question in that case was whether or not there was any substantial evidence to show mental incapacity or undue influence, and MARSHALL, J., held that there was no such evidence. The question is this case was not therefore in that case. So too in Riggin v. Westminster College, 160 Mo. l. c. 579, we found this language:

"The rule in this State is, that one who is capable of comprehending all his property and all persons who reasonably come within the range of his bounty, and who has sufficient intelligence to understand his ordinary business, and to know what disposition he is making of his property, has sufficient capacity to make a will. [Benoist v. Murrin, 58 Mo. 322; Jackson v. Hardin, 83 Mo. 175.] And the law indulges the presumption that the testator was possessed of a sound and disposing mind, and where the formal execution of a will according to the requirements of the statute

is shown, as was done in the case at bar, and the subscribing witnesses testify to the sanity of the testator, and he is of proper age to make a will, a prima-facie case in favor of the proponents of the will is made out, and the burden of proof rests upon the contestants to overcome this presumption by persuasive evidence.''

This case, like the Sehr case, supra, did not call for the expression of any opinion upon the question as to where the burden of proof rested in the issue of mental capacity. The case only calls for a discussion of the question of the sufficiency of the proof. In other words, whether there was any substantial evidence of mental incapacity, and we held that there was no such evidence. These are samples of expressions that we found in several other cases, but they were all cases wherein we were not required to give opinion as to where the burden of proof rested.

At the time of writing the Goodfellow case, supra, we also saw the language used by PHILIPS, Com., in Jackson v. Hardin, 83 Mo. l. c. 182, whereat he said: ''The law presumes that the testator was possessed of a sound and disposing mind. And after the statements made by the attesting witnesses, the burden of proof rested on the contestants to overcome this presumption by persuasive evidence.'' But like the other cases, we went back over the opinion in this case to see what we were called upon to decide. We found that Judge PHILIPS had thus formulated the question: ''Applying these established standards to the facts of this case, did the plaintiffs on the issue of mental incapacity make out a prima-facie case?'' So this case like the others did not involve the question in the case at bar.

Then in the Goodfellow case, having gone over all this line of cases, wherein we had expressions of the kind indicated above, we turned for cases wherein the question of the burden of proof was a real live

issue.   Cases where the matter had to be discussed
and determined in order to dispose of the case.   After
this examination, in Goodfellow v. Shannon, 197 Mo.
l. c. 278 et seq., we thus summarized our conclusions
of the holdings made by this court:

"Defendants criticise instruction number 11,
which is in this language:

"'The court instructs the jury that the burden
of proof is upon the defendants to show the writing
offered as the will of Caroline Shannon was executed
by Caroline Shannon as and for her will, and that at
the time of the execution thereof said Caroline Shan-
non was of sound and disposing mind and memory.'

"This instruction is proper.   It simply places
the onus upon defendants (the proponents of the will)
to show proper execution and attestation, and that
the testatrix was of sound mind.   This burden has
always been upon defendants in will contests.   [Carl
v. Gabel, 120 Mo. l. c. 295; Norton v. Paxton, 110 Mo.
l. c. 462; Craig v. Craig, 156 Mo. l. c. 362; Maddox v.
Maddox, 114 Mo. l. c. 46.]

"In Norton v. Paxton, supra, where the very
same question was up, it was said: 'It is sufficient
for those who claim under the will to make out a prima-
facie case in the first instance.   There is a presump-
tion that every adult person is *compos mentis,* but the
presumption is one of fact only.   It may be that the
production of a will, reasonable on its face, with proof
of due execution and attestation, and that the testator
was of full age, will make out a prima-facie case on
the part of the proponents, thus giving full force to
the presumption, though the usual course is to offer
some evidence of mental capacity.   The parties claim-
ing under the will having made out a prima-facie case,
the contestants must bring forward their evidence.
But it does not follow from all this that the burden of
proof shifts.   It remains with those claiming under
the will.'

"In Craig v. Craig, supra, Judge VALLIANT says: 'It is as essential that the testator be proven of sound mind at the time as that the instrument was executed in due form, yet this court has held that it is not essential that both subscribing witnesses testify to the soundness of mind in the testator.'

"It, therefore, appears that while our practice requires the making of a prima-facie case by the proponents of the will, by showing the due execution of the will and the sanity of the testator, and then requires contestants to put in their case, it does not shift the burden of proof as to mental capacity, but this burden remains throughout with the defendants, or proponents of the will."

Our judgment at that time was in a large measure due to the exhaustive review of the case law in Missouri, upon the exact question, by BLACK, J., in Norton v. Paxton, 110 Mo. 456, l. c. 461. Judge BLACK in the Norton case said:

"The second instruction given at the request of the contestants is so framed as to direct a verdict for them, unless it appeared from all the evidence that deceased possessed a disposing mind; while the one given for defendant cast the burden upon the contestants to show want of testamentary capacity. They are plainly conflicting, and one of them should have been refused.

"Much has been said in the books concerning the burden of proof in these will cases. Under our law the proceeding to contest a probated will is in the nature of an appeal and a trial *de novo*. There can be no doubt but it devolves upon those who claim under the will to show that it was duly executed and attested, and that the testator was of the requisite age. [Cravens v. Faulconer, 28 Mo. 21; Tingley v. Cowgill, 48 Mo. 294.]

In Harris v. Hays, 53 Mo. 90, it was said the proper course is for the proponents of the will to in-

troduce the subscribing witnesses, and establish by them the execution of the will and the sanity of the testator. This makes out a prima-facie case, and the burden of establishing incompetency or undue influence rests then on the contestants. In the case of Benoist v. Murrin, 58 Mo. 322, the contestants admitted the genuineness of the signatures of the testator and the witnesses, but did not admit the sanity of the testator. This court denied to contestants the right to open and close, and in clear and unqualified terms held that it devolved upon those claiming under the will to establish the sanity of the testator. It also held that this burden was not shifted during the trial by proof of the factum of the will and testamentary competency by the attesting witnesses, but remained with the party setting up the will. Jackson v. Hardin, 83 Mo. 178, is cited as asserting a different rule, but we do not so understand that case.

"It is sufficient for those who claim under the will to make out a prima-facie case in the first instance. There is a presumption that every adult person is *compos mentis,* but the presumption is one of fact only. It may be that the production of a will, reasonable on its face, with proof of due execution and attestation, and that the testator was of full age, will make out a prima-facie case on the part of the proponents, thus giving full force to the presumption, though the usual course is to offer some evidence of mental capacity. The parties claiming under the will having made out a prima-facie case, the contestants must bring forward their evidence. But it does not follow from all this that the burden of proof shifts. It remains with those claiming under the will.

"As said by Mr. Schouler: 'And the larger and better class of American authorities point, moreover, to the conclusion that the court or jury trying the case must, upon the whole evidence, be satisfied that the testator was of sound mind; so that, if there be

inevitable doubt left on this point from all the testimony, the will cannot be considered as proved.' [Schouler on Wills, sec. 174.] This is in accord with the previous rulings of this court. It follows that the instruction given at the request of the contestants . is correct, and the one given at the request of the defendants is wrong."

This was a case in which the question of where rested the burden of proof was the crux of the case, as it was in the Goodfellow case, supra. The Norton case was cited with approval by MACFARLANE, J., in Maddox v. Maddox, 114 Mo. 1. c. 46, whereat he said:

"The onus is on the proponents of a will, in a contest of this character, to prove its proper execution and attestation and also that the testator was of proper age and of sound mind. When these facts are shown, a will prima-facie valid is established, and it then devolves upon those attacking its validity to prove fraud or undue influence, if either is charged. [Norton v. Paxton, supra; Gay v. Gillilan, 92 Mo. 255; Woerner's American Law of Administration, sec. 31; Jones v. Roberts, 37 Mo. App. 174; Schouler on Wills, sec. 239.]"

In Carl v. Gabel, 120 Mo. 1. c. 294, where the matter again came up on an instruction, as in the case at bar, BRACE, J., said:

"We find no error in the refusal of the court to give defendant's instruction number 10 or in giving number 1 for plaintiff. While it was not directly alleged in the petition that the testatrix was not of sound mind, this issue was necessarily involved in the issue which the court under the statute is required to frame and submit to the jury, i. e., 'Whether the writing produced be the will of the testator or not,' which issue must be tried by the jury. The court had no right to withdraw any part of that issue from the consideration of the jury. It is well settled law in this State

261Mo40

that 'the onus is on the proponents of a will, in a contest of this character, to prove its proper execution and attestation and also that the testator was of proper age and of sound mind. When these facts are shown, a will prima-facie valid is established, and it then devolves upon those attacking its validity to prove fraud or undue influence, if either is charged.' [Maddox v. Maddox, 114 Mo. 35, and authorities cited; Harris v. Hays, 53 Mo. 90.]''

In effect Judge BRACE says that the question of mental capacity is in all will cases. And if we were called upon (and I expect we are in the instant case) to give a reason for the Missouri rule, we would answer that it is because of the wording of our Statute of Wills. The statute not only says how wills shall be made, but it also says who can make them. Section 535, Revised Statutes 1909, reads:

Mental Capacity: The Statute.

"Every male person, twenty-one years of age and upward, of sound mind, may, by last will, devise all his estate, real, personal and mixed, and all interests therein, saving the widow her dower. And every male person over the age of eighteen years, and of sound mind, may, by last will, bequeath all his personal estate, saving the widow her dower."

Section 536 speaks of women, but has the same phrase as to soundness of mind. Taking a will, which conveys land, made by a male, before it is a will at all, it must be by a male person over twenty-one years of age, and by a male person of sound mind. Before such will can be admitted to probate, if it conveys lands, it must be shown (1) that the person was a male person, (2) that he was over the age of twenty-one years, and (3) that he was of sound mind. It is just as much a part of the case for proponents of such a will to show mental soundness as it is to show sufficient age, in an attempt to probate or prove the will. We are speaking now of the probate court. As to what the

proof shall be in that court, section 551, Revised Statutes 1909, says:

"If such witness appear before such officer, and make oath on affirmation that the testator signed the writing annexed to such commission, as his last will, or that some other person signed it by his direction, and in his presence, *that he was of sound mind,* that the witness subscribed his name thereto in the presence of the testator, the testimony so taken shall have the same force as if taken before the court or clerk."

Thus it would seem that the proof required to probate a will in the first instance goes not only to the formal execution of the will, but also to the mental condition of the testator as well. In other words, the proof must show that the person falls within the class authorized to make wills, i. e., those of sound mind, as classified by sections 535 and 536, Revised Statutes 1909.

If the statutes place this onus or burden upon the proponents in the probate court, as they clearly do, then per force of the same statutes it remains there in the circuit court, because a will contest under our statute is but the probating or rejecting of a will. Such to me seems a sufficient reason for our rule. That the rule in Missouri is as stated in the instruction attacked in this case, has been conceded by textwriters. In 1 Underhill on the Law of Wills, section 86, it is said: ·

"In Michigan, Maine, Missouri and Vermont, the courts hold that the burden of proof to show capacity is upon him who propounds the will for probate, and that it is not met by making out a prima-facie case, but remains upon him throughout the trial. In some cases the courts which hold that the burden of proof is upon the proponent throughout, based upon the theory that there is a difference in the mode of proof which is required in the case of the probate wills and that required in the case of an instrument *inter vivos.*"

It is safe to say that in every Missouri case when the question of where the burden of proof rested was the crux of the case upon appeal, we have always held that the jury, as to mental capacity, should be told that the burden was upon the proponents of the will, throughout the whole case, to show mental capacity. With this rule we are satisfied, and shall not depart therefrom now. The instruction given for plaintiffs declared the law.

IV. The fifth instruction given at the instance of the plaintiff is sharply criticized. This instruction reads:

"The court instructs the jury that in determining the issue of sufficient soundness of mind or testamentary capacity, possessed by the testator, to make a will, you are instructed that if a person has not mind and memory enough to understand the ordinary affairs of life, the value, extent, and nature of his property, the number and names of the persons who are the natural objects of his bounty, their deserts with reference to their conduct and treatment of him, their capacity and necessity, and has not active memory enough to retain all these facts in his mind long enough to have this will prepared, he has no power to dispose of his property by will."

*Ordinary Affairs of Life.*

The clause objected to is "to understand the ordinary affairs of life." Defendants say this is too broad. We do not think so. If a person hasn't sufficient intelligence to understand the ordinary affairs of life he should not be permitted to make a will by which estates, either large or small, pass. The law graciously allows the disposition of property by will, because the owners thereof may have good and sufficient reasons for diverting it from the channels fixed by the Statutes of Descent and Distributions. But this method of conveying property must be understand-

ingly done. It cannot be done by a befogged and clouded mind, and for that reason the statute only authorizes a person of sound mind to make a will. One who does not have mind enough to comprehend and understand *the ordinary,* as distinguished from the intricate and complicated affairs, of life, has not that degree of mentality requisite for the making of a will. This test as to mental capacity was approved by LAMM, P. J., in Crum v. Crum, 231 Mo. l. c. 638, whereat, among other cases, he cites the exhaustive opinion of the Indiana court in Bower v. Bower, 146 Ind. l. c. 398 et seq. Division Two of this court lent its endorsement to this test of mental capacity in an opinion by FARIS, J., in Naylor v. McRuer, 248 Mo. l. c. 462. Thus both divisions of this court have recently approved the test of mental capacity fixed by this instruction numbered 5 for plaintiffs, and we see no reason to depart from these cases. Counsel cites us to no cases condemning such a test, and we still think the rule announced in the Crum case, supra, is well grounded.

V. Complaint is made of the following instructions:

"The court instructs the jury that under the law as it existed in 1859 and 1860, it was not required that a person be adjudged insane by any court **Insane Asylum.** or tribunal in order that he be placed in the insane asylum, but might be sent as private patient upon the certificate of two physicians."

As an abstraction the instruction properly declares the status of the law at that time. [R. S. 1855, p. 223.] It was abundantly shown that deceased was taken to the asylum at Fulton and remained there for over a year. Under such circumstances the instruction would at least be harmless. The fact is that this case might be tried fifty times, and in our judgm

there would be fifty verdicts against this will. This instruction evidently did the defendant no harm. What we have said as to instruction number 3, supra, applies with equal force to the harmless effect of instruction number 4, which is criticized. We doubt whether there is error in either of these instructions, but even if there is technical error, it is not such as affected the rights of the parties.

In my limited experience I have never read a will case wherein the judgment of the jury was so righteously wrought as in this case. Let the judgment be affirmed.

This case coming into Banc on a dissent, on a new hearing this, the divisional opinion of GRAVES, J., is adopted as the opinion of the Court. *Woodson, Walker* and *Faris, JJ.,* concur; *Brown, J.,* concurs in a separate opinion; *Lamm, C. J.,* does not sit; *Bond, J.,* dissents for reasons given in his dissenting opinion in Turner v. Anderson, 260 Mo. 1.

BROWN, J.—I concur in the views of brother GRAVES as expressed in the majority opinion. However, I do not approve the form of instruction number 5 given at the request of plaintiffs. In the aforementioned instruction testator is required to be able to understand the *"capacity and necessity"* of those who are the natural objects of his bounty. I do not understand the law to be that anyone is rendered ineligible to take under a will because he is deficient mentally or physically, nor do I believe that a testator is bound to know the "necessity" of those who are the natural objects of his bounty. If the testator's mind is strong enough to make a valid will he may give to those who have property and withhold his bounty from those who need it most.

That part of instruction number 5 referred to in this concurring opinion is not criticised by appellants,

and was not relied upon by them in their brief as a ground for reversal. I do not understand how it could have been harmful to appellants, under the facts of this particular case, but I can imagine cases where it might prove harmful, and this criticism is advanced to discourage its use in will contest cases.